IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02894-CBS

JASON BROOKS,

        Plaintiff,

v.

DAVID OBA,
PATRICK BLAKE,
ANGIE TURNER,
CORRECTIONS CORPORATION OF AMERICA,
DEBRA FOSTER,
JULIE RUSSELL,
KATHY HOWELL,
TIM CREANY,
DAVID TESSIERE,
DOLORES MONTOYA, and
TRUDY SICOTTE

        Defendants.

---

ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

---

Magistrate Judge Shaffer

        This matter comes before the court on a Motion to Dismiss (Doc. 73) filed on February 2, 2015, by Defendants Julie Russell, Kathy Howell, Tim Creany, David Tessier[1], and Dolores Montoya (collectively "CDOC Defendants"). Pursuant to the Order of Reference dated July 1, 2014, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate

---

[1] Defendant David Tessier's name has been spelled in a variety of ways throughout the pleadings and other filings. The court bases the spelling of his name on the Waiver of Service filed on his behalf. (Doc. 19).

Judges and Title 28 U.S.C. § 636(c).  (*See* Doc. 44).  This court has carefully considered the motions and related briefing, the entire case file, and applicable case law.  For the following reasons, the court grants the Motion to Dismiss in part, and denies it in part.

## FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND

The court incorporates the statement of facts and the procedural background from its order (Doc. 59) granting the CDOC Defendants' previous Motion to Dismiss (Doc. 36). In summary, Plaintiff, a *pro se* prisoner incarcerated in the Fremont Correctional Facility ("FCF"), alleges that he suffers from chronic ulcerative colitis, which causes inflammation and ulceration of the large intestine. He endures symptoms ranging from weight loss and dehydration to intestinal bleeding, rectal bleeding, severe abdominal pain, and muscle atrophy, and is plagued by the persistent need to use the restroom, which can result in his taking up to thirty bathroom trips a day.  (*See* Doc. 59 at 2-3). Plaintiff believes his condition can be managed with "appropriate medications, dietary supplementation, and exercise."  (Doc. 68 at ¶ 22).

On December 26, 2013, Plaintiff filed a 72-page amended complaint (Doc. 11), asserting thirteen claims for relief, two of which were dismissed as frivolous. (*See* Doc. 14). He claimed that the CDOC Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because they refused to (1) provide him with a gluten-free diet[2] and Ensure, a dietary supplement; (2) authorize special meal passes, exercise passes, and additional toilet paper; or (3) transfer him to a facility better equipped to manage his condition. (Doc. 11 at 56-58). He also claimed that Defendant Creany was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. *Id*. at 58-59.

---

[2] Plaintiff alleges that he has "a genetic predisposition to gluten intolerance and sensitivity" and that gluten exacerbates his ulcerative colitis.  (*See* Doc. 68 at ¶¶ 49, 116, 123).

Thereafter, the CDOC Defendants[3] filed a Motion to Dismiss the Amended Complaint in part.[4] (Doc. 36). On October 17, 2014, the court granted the motion to dismiss ("previous order"), but gave Plaintiff leave to amend his Eighth Amendment claims. Specifically, Plaintiff was permitted to amend his medical claim against Defendant Tessier and his conditions of confinement claim as related to his request for special meal passes.[5] (*See* Doc. 59).

On December 15, 2014, Plaintiff filed his Second Amended Prisoner Complaint ("SAC") for Money Damages, Declaratory and Injunctive Relief (Docs. 68 and 68-1). In the SAC, Plaintiff again claims that the CDOC Defendants as well as Defendants Patrick Blake, David Oba, Angie Turner, and Corrections Corporation of America ("CCA") (collectively "CCA Defendants") violated his Eighth Amendment right against cruel and unusual punishment.[6] The allegations in the SAC, in large part, mirror those in the amended complaint. The SAC also included new allegations regarding Defendant Tessier's and Defendant Sicotte's[7] actions. Specifically, Plaintiff alleges that — following a prescription from Dr. Vahil — Defendant Tessier (and Defendant Sicotte) "dismiss[ed] the doctor's orders, [and denied] the plaintiff access to the FCF's prescription medication program." (Doc. 68-1 at 15). Plaintiff's new complaint also includes allegations that, although his symptoms could be managed with appropriate medications, supplements, and exercise, he has not actually been able to do so. (Doc.

---

[3] The CDOC Defendants previously included the Colorado Department of Corrections, Paul Cline, Lou Archuletta, Rick Raemisch, and Ron Wager. These Defendants have been dismissed from the action. (Doc. 59).

[4] The CDOC defendants did not move for dismissal of the claim against Defendant Creany in their original motion. However, Defendant Creany has moved to dismiss the claims against him in the present motion.

[5] Plaintiff was not given leave to amend his First Amendment, Fourteenth Amendment, or Americans with Disabilities Act claims. In his Second Amended Complaint, Plaintiff includes factual allegations relevant to those claims; however, they remain dismissed.

[6] The CCA Defendants filed an answer (Doc. 69) to the SAC and are not subject to this order. Therefore, the CDOC Defendants will be referred to as "Defendants."

[7] Defendant Trudy Sicotte was added to this action through the Second Amended Complaint. She filed her Answer and Jury Demand on June 22, 2015 (Doc. 93), and is not subject to this order.

68-1 at ¶ 224). He further alleges that his symptoms are always "inflamed," which effects his ability to attend meals at the regularly scheduled times. *Id*.

On February 2, 2015, Defendants filed a Motion to Dismiss the Second Amended Complaint (Doc. 73). They contend that Plaintiff has failed to allege personal participation on behalf of Defendants Howell, Russell, Montoya, and Tessier. In addition they argue that they are entitled to qualified immunity because Plaintiff has failed to state any claims under the Eighth Amendment. Plaintiff filed his response on March 12, 2015 (Doc. 77), and Defendants filed a reply on April 6, 2015. (Doc. 80).

## STANDARD OF REVIEW

**A.     Fed. R. Civ. P. 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). The court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, this court may consider exhibits attached to the complaint without converting the motion into one for summary judgment pursuant to Rule 56. *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard requires more than the sheer possibility that a defendant has acted unlawfully. *Id*. Facts that are "merely consistent" with a defendant's liability are insufficient. *Id*. "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Mr. Brooks is not an attorney, his pleadings and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by a lawyer. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (19972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id*. However, this court cannot act as a *pro se* litigant's advocate. *Id*. It is the responsibility of the pro se plaintiff to provide a simple and concise statement of his claims and the specific conduct that gives rise to each asserted claim. *See Willis v. MCI Telecomms.*, 3 F. Supp. 2d 673, 675 (E.D.N.C. 1998). This court may not "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of*

*New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Nor may a plaintiff defeat a motion to dismiss by alluding to facts that have not been alleged, or by suggesting violations that have not been plead. *Associated General Contractors of California Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## B. Qualified Immunity

Each of the Defendants has raised the qualified immunity defense as to the claims asserted against them. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Qualified immunity is "immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

In resolving a motion to dismiss based on qualified immunity, this court must consider "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. The plaintiff bears the burden of showing, with particularity, facts and law establishing the inference that the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at 236. The court has the discretion to consider these prongs in any order it chooses. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

As to the first prong, "[i]f no constitutional right would have been violated were the allegations established," the inquiry is at an end. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong — whether the right was clearly established — must be considered "in light of the specific context of the case, not as a broad general proposition." *Id*. An official's conduct "violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing is violating that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

## ANALYSIS

In the SAC, Plaintiff claims that he has suffered cruel and unusual punishment at FCF because (1) Defendant Creany was deliberately indifferent to Plaintiff's serious medical needs; (2) Defendant Tessier failed to authorize an adequate gluten-free diet; and (3) Defendants Montoya, Howell, Russell, and Tessier failed to authorize special meal passes.

Title 42 U.S.C. § 1983 allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citation omitted). "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citation omitted). The Eighth Amendment also prohibits "unnecessary and

wanton infliction of pain," including "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).  Prison officials may be liable for an Eighth Amendment violation for "indifference…manifested…in their response to the prisoner's needs or by…intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed."  *Estate of Booker v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014).

"The test for constitutional liability of prison officials involves both an objective and a subjective component." *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005) (internal quotations and citation omitted).  First, the prisoner must "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'"  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata*, 427 F.3d at 751 (holding that even a physician's grossly negligent medical judgment is not subject to scrutiny if the prisoner's need for medical treatment was not obvious) (internal quotations and citation omitted).  Furthermore, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan,* 241 F.3d 1272, 1276 (10th Cir. 2001) (quotations and citation omitted).  The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain."  *Garrett v. Stratman,* 254 F.3d 946, 950 (10th Cir. 2001) (citation omitted).

Second, under the subjective component, the prisoner must establish deliberate indifference to his serious medical needs by "present[ing] evidence of the prison official's culpable state of mind."  *Mata*, 427 F.3d at 751.  "Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at

104 (internal quotation and citation omitted). The Tenth Circuit recognizes two types of conduct constituting deliberate indifference. The first occurs when a medical professional fails to properly treat a serious medical condition. Under this type of deliberate indifference, an assertion of mere negligence or even medical malpractice does not give rise to a constitutional violation. *Perkins v. Kansas Dept. of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). Further, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. *Id.*

The second type of deliberate indifference occurs when a prison official prevents an inmate from receiving treatment or denies him access to medical personnel capable of providing treatment. *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) (internal citations omitted). A prison health official who serves "'solely…as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill the gatekeeper role.'" *Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211. The subjective standard requires a state of mind "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837) (internal quotations and further citation omitted). "'[A]n inadvertent failure to provide adequate medical care' does not rise to a constitutional violation." *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Estelle,* 429 U.S. at 105–06). The plaintiff must allege that defendants personally participated in the Eighth Amendment violation. *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citing *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976)). "Whether a prison official had the requisite knowledge of a substantial risk is a

9

question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Self*, 439 F.3d at 1231 (internal quotations omitted).

In their Motion to Dismiss, Defendants argue that Plaintiff has failed to allege personal participation on the part of Defendants Howell, Russell, Montoya, and Tessier, and that he has failed to state a claim for relief under the Eighth Amendment. (*See* Doc. 73 at 5-9, 10-19). At this stage in the litigation the court must "accept as true all well-pleaded factual allegations" and view those allegations "in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).

###### A. Personal Participation of Defendant Montoya

In the SAC, Plaintiff contends that his Eighth Amendment right was violated because Defendant Montoya failed to provide him with a special meal pass.[8] Careful review of the allegations in the SAC demonstrates that Plaintiff has failed to sufficiently allege personal participation on behalf of Defendant Montoya.

Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To maintain a Section 1983 action, the plaintiff must allege facts showing that the defendant was "personally involved in the decisions leading to [the plaintiff's] mistreatment." *Escobar v. Reid*, 668 F.Supp.2d 1260, 1290 (D.Colo. 2009). A plaintiff must establish an affirmative link between the alleged constitutional violation and each Defendant's participation, control, or direction. *Serna v. Colorado Dept. of Corr.*, 455 F.3d 1146, 1152-53 (10th Cir. 2006).

---

[8] The SAC also includes allegations relevant to Defendant Montoya's alleged refusal to provide Plaintiff with additional toilet paper. Plaintiff's claim regarding the provision of toilet paper has been dismissed and, therefore, these allegations are irrelevant to the remaining claim against Defendant Montoya.

Here, the SAC contains few allegations regarding the specific actions of Defendant Montoya.[9] Plaintiff alleges that on March 5, 2012, his mother spoke with Defendant Montoya regarding Plaintiff's medical problems. (Doc. 68 at ¶ 146). In response to this conversation, Defendant Montoya issued Plaintiff a medical pass that would allow him to attend meals outside of regularly scheduled meal times. *Id*. On June 5, 2012, Plaintiff requested that Defendant Montoya renew the special meal pass. Plaintiff alleges, without more, that "no reasonable response [was] given." However, it is unclear whether "no reasonable response" means that Defendant Montoya denied Plaintiff's request, or whether she did not respond at all. Denuded of any supporting facts, such a statement is conclusory and insufficient to demonstrate any personal involvement on the part of Defendant Montoya in Plaintiff's alleged mistreatment. Furthermore, to the extent that Plaintiff did not receive a response from Defendant Montoya, it is apparently because she retired. *Id*. at ¶ 210. Therefore, contrary to Plaintiff's contentions, his allegations establish that Defendant Montoya did, in fact, attempt to accommodate his illness, and the only reason she did not renew Plaintiff's meal pass was due to her retirement.

Consequently, Plaintiff has failed to allege personal participation on the part of Defendant Montoya; the court, therefore, concludes that Plaintiff's claim against her should be dismissed.

### B.     Medical Treatment by Doctor Creany

Plaintiff contends that Dr. Creany was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because he (1) failed to have Plaintiff's gluten-free

---

[9] There are several allegations wherein Plaintiff refers to Defendant Montoya as part of a group of offending Defendants. (See Doc. 68 at ¶ 139 and Doc. 68-1 at ¶¶ 186, 223). However, he provides no details as to Defendant Montoya's specific actions. The pleading standards require more. *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (a claimant must explain what each defendant did nto him or her, when the defendant did it, how the defendant's actions harmed him or her, and what legal right the plaintiff believes has been violated).

diet immediately available upon his transfer to FSF; (2) prescribed medications that were "known to cause immune-suppression (worsening) of [Plaintiff's] symptoms;" (3) failed to provide nutritional supplements or pain medications as prescribed by Defendant Oba; and (4) allowed Plaintiff to discontinue his medical diet. After a thorough review of Plaintiff's allegations, the court concludes that he has failed to satisfy the deliberate indifference inquiry.

1. Delay in Gluten-Free Diet

In the SAC, Plaintiff alleges that — following his transfer to FCF — his gluten free diet was delayed for eight days. He contends that Dr. Creany violated the Eighth Amendment because he failed to ensure that "[Plaintiff's] prescribed medical diet was immediately provided when he arrived at the FCF." (Doc. 68-1 at 25). For two reasons, the court concludes that Plaintiff has failed to allege a violation of the Eighth Amendment.

First, there are no allegations in the SAC that Dr. Creany had any advance knowledge of Plaintiff's transfer to FCF. Nor are there any allegations that Dr. Creany knew, prior to his arrival, that Plaintiff's medical condition necessitated a gluten-free diet. Consequently, the SAC fails to allege that Dr. Creany knew of a substantial risk to Plaintiff's heath or that he disregarded such a risk. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("[A] prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

Second, to the extent that Plaintiff relies on the five-day delay — between his first appointment with Dr. Creany on February 17, 2012[10], and the provision of a gluten-free diet on February 22, 2012 — Plaintiff has failed to allege any substantial harm resulting from such a delay. "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or

---

[10] Plaintiff alleges that he thoroughly explained his need for a "medical diet" to Dr. Creany. (Doc. 68 at ¶ 131).

interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone" in determining whether the alleged deprivation was sufficiently serious. *Smith*, 316 F.3d at 185.  A delay or interruption in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2007).

Accordingly, the issue here is whether the five-day delay in Plaintiff's gluten-free diet resulted in substantial harm. *Sealock*, 218 F.3d at 1210; *see also Graham v. Wright*, 2004 WL 1794503 (S.D.N.Y. Aug. 10, 2004) (In case where prisoner complained of delay in providing treatment for Hepatitis C, the court held that the objective element of deliberate indifference standard must be satisfied by "harm that resulted from the delay."). A close reading of Plaintiff's complaint shows that he has not sufficiently alleged any injury that would constitute substantial harm. Here, Plaintiff alleges only that, as a result of the delay, his condition went into "crisis" for more than three months. Plaintiff has failed to provide any supporting factual allegations explaining what the "crisis" entailed; therefore, the court concludes that the Plaintiff has failed to nudge his claim "across the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 680 (2009) (citing *Twombly*, 550 U.S. at 570)).

### 2.  Prescriptions

Plaintiff also contends that Dr. Creany violated the Eighth Amendment when he prescribed Plaintiff Prednisone, and when he failed to prescribe supplements and pain medications that were previously prescribed by Defendant Oba. A review of the SAC demonstrates that Plaintiff has strong opinions as to the precise way his medical condition should be treated. However, factual allegations showing a mere difference of opinion as to the proper

course of treatment do not state a constitutional violation. *Perkins*, 165 F.3d at 811. "[A] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).

Here, the SAC clearly alleges that — contrary to Plaintiff's contention of deliberate indifference — Dr. Creany was treating Plaintiff's ulcerative colitis, and attempted to accommodate Plaintiff's various requests for gluten-free diets and nutritional supplements.[11] Indeed, Plaintiff alleges little more than a difference of opinion as to the proper course of treatment. At most, Plaintiff's disagreement amounts to an allegation of medical malpractice, which is not actionable under the Eighth Amendment. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Consequently, Plaintiff has not alleged that Dr. Creany acted with a culpable state of mind and these claims must be dismissed.

### 3. Discontinuation of Diet

Finally, Plaintiff contends that Dr. Creany was deliberately indifferent in violation of the Eighth Amendment because he allowed Plaintiff to discontinue his gluten-free diet. The precise contours of this contention are unclear and Plaintiff's argument could be interpreted in two ways. Plaintiff could be faulting Dr. Creany for (1) failing to ensure that Plaintiff was provided with a calorically-sufficient, gluten-free meal; or (2) failing to intervene when Plaintiff voluntarily discontinued his gluten-free diet. Under either permutation, however, the court concludes that Plaintiff has failed to state a claim for relief.

---

[11] Furthermore, according to Plaintiff's own allegations, it was Defendant Tessier who prevented Dr. Creany from ordering the nutritional supplements. (Doc. 68-1 at ¶ 213).

According to the SAC, in April 2013, the CDOC's gluten-free diet became calorically insufficient.[12] When Plaintiff complained about the new diet, Dr. Creany referred Plaintiff to a dietician who, in turn, recommended a more specialized gluten-free diet for Plaintiff. (Doc. 68-1 at ¶¶ 199-200). The dietician also allegedly recommended that Plaintiff's meals be supplemented with Ensure *if* the meals and snacks, alone, were not enough to stabilize his weight. *Id.* at ¶ 200. Plaintiff contends that, even on this modified diet, he continued to lose weight and, therefore, he required the Ensure. Based on these allegations, it is evident that Dr. Creany did attempt to address Plaintiff's concerns regarding the calorically-deficient, gluten-free diet by referring him to the dietician. Thus, Plaintiff has failed to allege that Dr. Creany disregarded a risk to Plaintiff's health.

Furthermore, a close reading of the SAC demonstrates that Plaintiff's true complaint is based on the fact that he did not receive his Ensure. (Doc. 68-1 at ¶ 214). He alleges that the gluten-free diet, because of its caloric deficiency, must be supplemented with Ensure. *Id.* However, according to Plaintiff's allegations, it was Defendant Tessier who prevented Dr. Creany from procuring the nutritional supplement for Plaintiff. *Id.* at ¶ 213. And it was Dr. Creany who actually advised Plaintiff on how to receive Ensure — by obtaining a prescription from Dr. Vahil, the gastroenterologist. *Id.* Consequently, Plaintiff has failed to allege any deliberate indifference on the part of Dr. Creany.

To the extent that Plaintiff contends Dr. Creany should have intervened when Plaintiff voluntarily discontinued his gluten-free diet, Plaintiff has failed to state a claim of deliberate indifference. According to the SAC, in August 2013 — after Plaintiff was informed that he would need a prescription from a gastroenterologist in order to receive Ensure — Plaintiff chose

---

[12] As the court understands the SAC, Plaintiff alleges that following the change, the CDOC-sanctioned, gluten-free diet was comprised mostly of stale tortilla chips. Although this seems improbable, at this stage of the proceedings, the court accepts this allegation as true.

to discontinue his gluten-free diet. (Doc. 68-1 at ¶ 213). However, there are no allegations that Dr. Creany knew that Plaintiff had voluntarily resumed eating gluten.[13] Therefore, Plaintiff has failed to establish any subjective knowledge on the part of Dr. Creany. *Brennan*, 511 U.S. at 847 ("[A] prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

For the foregoing reasons, Plaintiff's claim against Dr. Creany (claim six) must be dismissed.[14]

### c.   Plaintiff's Dietary Needs

As discussed above, Plaintiff alleges that the CDOC-sanctioned, gluten-free diet is calorically insufficient and, therefore, he cannot maintain a healthy weight without supplemental nutrition in the form of Ensure. And because he has not been provided with Ensure, Plaintiff is forced to eat glutinous foods, which aggravates his ulcerative colitis and causes him constant pain and discomfort. Specifically, Plaintiff's condition causes him to suffer from internal bleeding, controlled only by pain medication that weakens his joints; incessant urges to use the bathroom that prevent him from obtaining regular meals, exercise, and sleep; and severe

---

[13] Moreover, the court is hard-pressed to understand how Dr. Creany can be held accountable for Plaintiff's voluntary choice to eat gluten, particularly when Dr. Creany referred Plaintiff to a dietician in an attempt to have calorically-sufficient, gluten-free meals provided for Plaintiff. Although prison administrators would have to intervene in certain situations involving an inmate's eating habits (i.e., where a complete refusal to eat turns suicidal or was the result of insanity), *see Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir, 2005), such situations are not present here.

[14] Throughout his complaint, Plaintiff also alleges that Dr. Creany refused to provide Plaintiff with a specialized meal pass. However, in his response to the motion to dismiss, Plaintiff admits that Defendants Howell, Russell and Tessier were the only defendants with the authority to provide special meal passes. (Doc. 77 at 8). Thus, to the extent he asserts such a claim, Plaintiff cannot establish any personal participation on the part of Dr. Creany in the denial of the specialized meal passes. *See Butler v. Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) (there must be an affirmative link between the violation and the defendant's participation, control or direction, or failure to supervise).

dehydration. As stated in the court's previous order (Doc. 59), these allegations establish that Plaintiff has a sufficiently serious medical need for a specific diet.

In the Amended Complaint (Doc. 11), Plaintiff alleged that he resumed requesting Ensure in May 2013, but Defendant Tessier allegedly refused to authorize it on the basis that Plaintiff did not qualify. *Id*. at 51. The court concluded that this allegation, alone, was insufficient to demonstrate that Defendant Tessier consciously disregarded a substantial risk to Plaintiff's health or abdicated his duty as gatekeeper. (Doc. 59 at 15). The court did note, however, that certain allegations in Plaintiff's Motion for Preliminary Injunction (Doc. 49) were relevant to the subjective component of Plaintiff's Eighth Amendment claim. Consequently, the court granted the motion to dismiss, but gave Plaintiff leave to amend his complaint as to the claim against Defendant Tessier. (Doc. 59 at 16).

In the SAC, Plaintiff alleges that in June 2014, Dr. Vahil, his gastroenterologist, specifically prescribed Plaintiff a gluten-free diet and one can of Ensure, three times per day. (Doc. 68-1 at ¶ 216). Plaintiff further alleges that, despite the prescription, Defendants Tessier and Sicotte denied his Ensure. *Id*.

In the new Motion to Dismiss (Doc. 73), Defendants contend that Plaintiff has failed to state a claim of supervisory liability against Defendant Tessier. *Id*. at 7. Indeed, many of Plaintiff's allegations allege that Defendant Tessier "allowed" Defendant Sciotte to discontinue Plaintiff's prescription for Ensure. (*See* Doc. 68-1 at ¶ 216 ("Tessiere [sic] is wantonly, egregiously, and intentionally allowing defendant Sicotte the authority to override Dr. Vahil's standing medical directive"); ¶ 220 ("Defendant Tessiere [sic] allowed . . . defendant Sicotte the ability to undermine Mr. Frickey's medical directive, and she takes away the diet and ensure without excuse"); ¶ 222 ("defendant Tessiere [sic], by and through defendant Sicotte, is

17

wantonly, egregiously, and knowingly allowing" the denial of Plaintiff's Ensure)). And the court agrees that — to the extent that Plaintiff sought to do so — his allegations do not support a claim of supervisory liability.[15] He has not alleged any facts demonstrating that Defendant Tessier had the right to control Defendant Sciotte's actions, nor has he alleged that Defendant Tessier was specifically aware that Defendant Sciotte was denying Plaintiff's Ensure. *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (to establish supervisory liability, a plaintiff must demonstrate that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation").

That said, however, Plaintiff does allege that — after Dr. Vahil prescribed the Ensure — "Defendants Tessiere [sic] and Sciotte dismiss the doctors [sic] orders, denying the plaintiff access to the FCF's prescription medication program . . . ." Doc. 68-1 at ¶ 216. Accepting this allegation true and construing Plaintiff's pleading liberally and in the light most favorable to Plaintiff, as it must, the court concludes that — at this stage of the case — Plaintiff has sufficiently alleged that Defendant Tessier directly denied Plaintiff his Ensure with the knowledge that it was medically necessary to Plaintiff's health.

d.  Specialized Meal Passes

Finally, in the SAC, as in the amended complaint, Plaintiff claims that Defendants Russell, Howell, and Tessier refused to authorize a specialized meal pass so that he could eat before or after designated times in the event he was too ill to attend meals. (Doc. 68-1 at 22-23). He also alleges he missed "hundreds of meals" as a result of his medical condition. (*See Id*. at

---

[15] In his response, Plaintiff states that he does not seek to impose supervisory liability on Defendant Tessier, but rather, seeks to impose liability based only on Defendant Tessier's direct involvement. (Doc. 77 at 3).

22). In its previous order (Doc. 59), the court noted that Plaintiff had not alleged why his ulcerative colitis caused him to continue to miss meals if he was receiving his requested medical diet. Accordingly, the court allowed Plaintiff to amend his complaint as to why he required a meal pass after he began receiving his medical diet and nutritional supplements. (Doc. 59 at 18). In the SAC, Plaintiff alleges that he is often unable to receive his prescriptions and that his symptoms are "clinically considered inflamed at all times." (Doc. 68-1 at ¶¶ 223-224). Although these allegations seem to be contradicted by other allegations in the complaint, the court nonetheless accepts Plaintiff's allegation as true, as it must, and concludes that it is sufficient to state a condition of confinement claim against Defendant Russell and Defendant Howell.

However, after careful review of the SAC complaint, the court concludes that this claim must be dismissed as against Defendant Tessier. While there are allegations that Defendants Russell and Howell knew that Plaintiff's condition was causing him to miss meals[16], there are no allegations demonstrating that Defendant Tessier was aware of such a risk. Consequently, Plaintiff has failed to satisfy the subjective element of the Eighth Amendment inquiry as to Defendant Tessier.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 73) is GRANTED in part and DENIED in part.

DATED at Denver, Colorado, this 1st day of July, 2015.

BY THE COURT:

---

[16] Plaintiff has alleged that his mother spoke with Defendant Russell and explained how Plaintiff's medical condition interfered with his ability to attend meals at the regularly scheduled times. Doc. 68 at ¶ 137. Plaintiff also alleged that Defendant Howell attended a "staffing" where Plaintiff thoroughly explained all of the issues that he had complained about in grievances and letters. (*Id.* at ¶ 186). Although the question is quite close, the court concludes that under the liberal construction afforded to Plaintiff at this stage of the proceedings, these allegations are sufficient.

s/Craig B. Shaffer_____
United States Magistrate Judge