IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02894-SKC
_____

DEPOSITION OF:   ADRIENNE SANCHEZ - November 3, 2022
                 (via RemoteDepo)
_____

JASON T. BROOKS,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
JULIE RUSSELL,
KATHY HOWELL, and
DAVID TESSIER,

Defendants.
_____

          PURSUANT TO NOTICE, the deposition of
ADRIENNE SANCHEZ was taken on behalf of the Plaintiff
in Colorado Springs, Colorado, by remote means, on
November 3, 2022, at 1:05 p.m., before Darcy Curtis,
Registered Professional Reporter and Notary Public
within Colorado, appearing remotely from Denver
County.

**PLAINTIFF'S MIL NO. 1 - EXHIBIT A**

Adrienne Sanchez
November 03, 2022

Page 82

1    MR. URQUHART:  Objection as to form.
2        Q.  (BY MR. HOMIAK)  And your testimony
3  today, as far as the reason why Mr. Brooks was denied
4  the movement pass as we have defined it, which is to
5  access meals early with the first pull, is, number
6  one, clinical didn't feel that he needed it; is that
7  fair?
8        A.  Fair.
9        Q.  And number two is really talking about
10 this free-range pass, which is kind of a different
11 definition than we've used to define a movement pass.
12 Do you understand that difference?
13       A.  Yes, but I know that he requested both.
14 He was not requesting simply one to go early.
15       Q.  So I just want to focus on the movement
16 pass as we've defined it in your declaration,
17 paragraphs 7 and 8, which is Mr. Brooks could access
18 meals early with the first pull.
19       A.  Got it.
20       Q.  Do you agree with -- and I want to make
21 sure I'm understanding all of the rationale for that
22 pass, not any other pass, not unfettered access,
23 anything else.  Is there any other rationale that you
24 can identify that you're familiar with other than this
25 piece of clinical didn't feel he needed it or it was

Page 83

1  necessary because he wasn't -- he didn't actually have
2  fecal incontinence, that explanation?
3        MR. URQUHART:  Objection as to form.
4        A.  Can you repeat the question?  I'm sorry.
5  I was reading at the same time.  I can't --
6        Q.  (BY MR. HOMIAK)  Yeah, so I'll take a
7  step back.  So we've defined the movement pass that
8  you're referring to in paragraphs 7 and 8 as a pass so
9  that Mr. Brooks could access meals early with the
10 first pull.
11       A.  Got it.
12       Q.  Do you agree with the decision to deny
13 Mr. Brooks that meal pass or that movement pass?
14 Excuse me.
15       MR. URQUHART:  Objection as to form and
16 foundation, but you can answer.
17       A.  Yes, because on the request form, he was
18 requesting the Medline with it so that it conflates
19 the issue.
20       Q.  (BY MR. HOMIAK)  We're talking about
21 something different.  So we have defined movement
22 pass, according to paragraphs 7 and 8, as a meal -- as
23 a pass that Mr. Brooks could access meals early with
24 the first pull.  Assuming that that is the pass that
25 he was requesting, not anything about Medline, not

Page 84

1  anything about unfettered access, literally just a
2  pass that he could access meals early with the first
3  pull, do you agree or disagree with that decision to
4  deny him that pass as we've defined it?
5        MR. URQUHART:  Form and foundation.
6        A.  I agree.
7        Q.  (BY MR. HOMIAK)  Okay.  And why?
8        A.  Because just because it's something that
9  we can do doesn't mean we always do it, so there's got
10 to be a reason why it's needed.  So if there was a
11 denial, then there was a reason it would not have been
12 given to him.
13       Q.  And what is your understanding of the
14 reason why Mr. Brooks was denied the movement pass
15 that we've defined as him being able to access meals
16 early with the first pull?
17       MR. URQUHART:  Objection as to
18 foundation.  And you can answer, but we're starting to
19 get pretty far over the two-hour limit.
20       MR. HOMIAK:  Yeah.  And I think you
21 understand the issues I'm running into, which is we're
22 talking about a bunch of different passes and the pass
23 that I'm concerned about is as defined in the
24 declaration and the straight answer, which I'm looking
25 for, is why was he denied, not a different pass, not

Page 85

1  unfettered access, the pass that Ms. Sanchez is
2  talking about in her declaration.  Number one, why was
3  he denied that, and number two, whether Ms. Sanchez
4  agrees or disagrees with that decision.  That's it.
5  So if I get the answer to those two questions, then --
6        A.  ==He was denied because it was determined
7  it wasn't needed by clinical; therefore, we denied it
8  as being unreasonable and I stand by that decision.==
9        MR. HOMIAK:  Okay.  Then that is all I
10 have.  Thank you.
11       MR. URQUHART:  Let's take two minutes.
12 Let me confer with Kelley and then I think we might
13 have a couple of questions, but just a couple.  But I
14 want to confer with Kelley first.
15       (Recess taken, 3:14 p.m. to 3:19 p.m.,
16 after which Ms. Lieb was present.)
17              EXAMINATION
18 BY MR. URQUHART:
19       Q.  Ms. Sanchez, have you seen this document
20 before?
21       A.  Yes.  I would have seen it in 2014 and
22 certainly probably a couple of times since then.
23       Q.  What does it look like?
24       A.  It looks to me like a complaint.  We get
25 lots of these.

**PLAINTIFF'S MIL NO. 1 - EXHIBIT A**