IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02894-CBS

JASON BROOKS,

    Plaintiff,

v.

DAVID OBA,
PATRICK BLAKE,
ANGIE TURNER,
JULIE RUSSELL,
KATHY HOWELL,
DAVID TESSIERE, and
TRUDY SICOTTE,

    Defendants.

## AFFIDAVIT OF SUSAN TIONA

I, Susan Tiona, being first duly sworn upon oath, state as follows:

    1.    I am over the age of 18 years. This affidavit is made upon personal knowledge.

    2.    I am employed by the Colorado Department of Corrections as a Physician and the Chief Medical Officer. I have been employed as the Chief Medical Officer since 2015.

    3.    As the Chief Medical Officer, my duties are to oversee the provision of health care to the offender population throughout the CDOC, actively participating in that care when needed; to formulate clinical policies and procedures that ensure that such health care provision is medically and ethically sound; and to facilitate the training of health care practitioners within the CDOC in matters of evidence-based standard of care.

    4.    I received my medical degree from Loyola University Stritch School of Medicine in June of 1992. In June of 1995 I completed Residency at the St. Francis - Mayo

**Exhibit F**

PLAINTIFF'S MIL NO. 1 - EXHIBIT B

Family Practice Residency in LaCrosse, WI, and have maintained board certification in Family Medicine since that time.

5. I have reviewed the medical file for Mr. Jason Brooks, and I am familiar with his complaint against the Department of Corrections. Specifically, Mr. Brooks is alleging that the defendants should have (1) allowed him a special pass to go to and from the chow hall at either first pull or when his unit was called, and (2) should have ordered a gluten-free diet and Ensure, as suggested by the gastroenterologist, Dr. Vahil. With regard to these allegations, I attest to the following:

6. Ulcerative colitis is a chronic disease of the colon characterized by relapsing and remitting episodes of inflammation limited to the mucosal (surface) layer of the colon. It almost invariably involves the rectum and may extend in upward and in continuous fashion to involve other parts of the colon. The cause of ulcerative colitis is not known and symptoms vary significantly between individuals. Symptoms also tend to vary over time. Some patients may experience remission, with or without medical treatment. Other patients' symptoms will persist despite medical treatment.

7. Plaintiff had a colonoscopy on 9/9/2011 which showed chronic, active colitis in throughout the colon, with the worst affected area being in the rectosigmoid (lower colon) area.

8. Plaintiff is 6'2" tall and weighed 150 pounds upon entry to the Department of Corrections in 2010. His Body Mass Index (BMI) at that time was 19.3. His lowest recorded weight was in April 2012 at which time he weighed 143 pounds, with a BMI of 18.4. According to the National Institutes of Health, a BMI less than 18.0 is considered underweight. Plaintiff has never been underweight, and therefore caloric supplementation

with Ensure was not required for treatment of Plaintiff's ulcerative colitis. Although a provider may recommend Ensure as a way to increase caloric intake, absent some evidence of malnutrition, as indicated by lab results, nutritional supplementation is not medically necessary.

9. Plaintiff had regular blood tests to assess his nutritional status and at no time did his lab tests indicate nutritional compromise. In March 2012, Plaintiff had a low "pre-albumin" level on a single lab test. Pre-albumin levels fluctuate with dietary intake every two to three days, and are not necessarily indicative of malnutrition. Therefore, it is necessary to repeat testing in order to determine if a pre-albumin level has any clinical significance. In addition, there have been no studies to support the use of pre-albumin levels in clinical decision making except for in the case of severely ill, hospitalized patients. Testing of pre-albumin levels in any other setting is not medically indicated. Plaintiff has had several blood tests since March 2012, and none indicate nutritional compromise. Therefore, nutritional support with Ensure supplementation was not required for treatment of Plaintiff's ulcerative colitis. Plaintiff does not face a serious risk of adverse health effects merely because he is not receiving Ensure.

10. Plaintiff has consistently purchased over $20 per week of food items from Canteen, including numerous gluten-containing food items, since his arrival in DOC.

11. At no time has Plaintiff tested positive for gluten-sensitive enteropathy, either by biopsy or by lab work. In fact, he specifically tested negative for this disease by blood testing on 3/1/2012.

12. In the absence of a diagnosis of gluten-sensitive enteropathy, a gluten-free diet is not indicated in the management of ulcerative colitis.

**PLAINTIFF'S MIL NO. 1 - EXHIBIT B**

13. An individual who has moderate or severe ulcerative colitis will have varying degrees of anemia (low levels of red blood cells) on lab testing. In spite of complaints of frequent bloody diarrhea, Plaintiff has never had anemia on lab testing.

14. Because of the severity of Plaintiff's complaints regarding his diarrhea, it was recommended in May 2012 that he undergo removal of the colon (total colectomy) to resolve his symptoms. Shortly thereafter, Plaintiff asked for a re-evaluation because he didn't feel that his condition warranted such a drastic treatment, and that perhaps he could do better with his medical therapy.

15. Plaintiff had a repeat colonoscopy on 2/12/2013 showing persistent but improved colitis in the left side and lower part of the colon. Another colonoscopy was done on 5/12/2015 showing mildly active "idiopathic inflammatory bowel disease" involving the left side and lower part of the colon.

16. From 2012 through 2014, Plaintiff's medication administration record shows that he was non-compliant with his prescribed medication. There is no record of him taking any of his prescribed medication during that time.

17. A pass allowing Plaintiff to leave for the chow hall with first pull was not required for treatment of Plaintiff's ulcerative colitis. And, at no time did Plaintiff demonstrate a medical necessity for any other alternative meal access procedure. If he was having uncontrollable diarrhea, it was likely caused by Plaintiff not taking his medication as prescribed. The solution would have been for Plaintiff to be compliant with his treatment. If he was suffering from incontinence, the appropriate solution is incontinence supplies. Incontinence supplies are commonly used by inmates to manage symptoms associated with various medical conditions.

**PLAINTIFF'S MIL NO. 1 - EXHIBIT B**

Further, affiant sayeth naught

*[signature]*
Dr. Susan Tiona

Subscribed and sworn to before me in the County of El Paso, State of Colorado, this 11th day of July, 2016.

*[signature]*
Notary Public

TERESA B REYNOLDS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 19924002360
MY COMMISSION EXPIRES MARCH 5, 2020

My commission expires: 3/5/2020

PLAINTIFF'S MIL NO. 1 - EXHIBIT B