IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02894-SKC

JASON BROOKS,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

---

**MOTION IN LIMINE RE: INADMISSIBILITY OF MEDICAL OR ADA EXPERT TESTIMONY PROVIDED BY WENDY UPDEGRAFF/VAYAH TERRA**

    Defendant Colorado Department of Corrections ("CDOC"), by and through the Colorado Attorney General, respectfully files the within Motion in Limine in anticipation of the jury trial set in this action, which as of this writing is set to begin on December 12, 2022.

    **Certificate of Conferral**. Pursuant to D.C.COLO.Civ.R. 7.1(b)(1), CDOC conferred with counsel for Plaintiff Jason Brooks. Counsel for Brooks indicated that he generally does not oppose an order that the witness in question should be precluded from offering expert testimony or opinion, though counsel reserves the right to dispute that any particular testimony is expert opinion in nature.

## STATEMENT OF THE CASE

    Brooks is a paroled inmate who was formerly in the custody of CDOC. He was charged with 24 counts of securities fraud in 2009. In 2010, Brooks pleaded guilty to four of those counts (two counts of Securities Fraud – Making an Untrue Statement, and two counts of Securities Fraud – Fraud or Deceit); the remaining charges were dismissed as part of his plea

1

deal. Essentially, according to his plea, Brooks acknowledged that he deceived victims into investing in a purported venture involving an exclusive distribution deal with a Japanese electronics manufacturer, when no such deal existed, and that he ultimately was able to defraud those investors out of more than $10 million. Brooks was sentenced to four consecutive eight-year sentences (for a total sentence of 32 years), and restitution in the amount of $5,131,760.95 was awarded. He was then taken into the custody of CDOC.

The sole live claim in the instant lawsuit involves a period of time from 2012 through 2018, in which Brooks was incarcerated at Fremont Correctional Facility ("Fremont"). Brooks contends that he suffers from ulcerative colitis, and by the time he was transferred to Fremont, the condition had progressed to the point where he was experiencing uncontrollable incontinence. Brooks claims that this ulcerative colitis constitutes a disability for the purposes of the Americans with Disabilities Act (the "ADA"), and that CDOC failed to accommodate that disability when it declined to provide him with a medline or movement pass[1] to allow him to access meals at the Fremont chow hall on a more flexible schedule. Brooks further contends that the failure to issue him such a pass caused him to miss numerous meals, and that as a result of those missed meals, he lost a significant amount of weight and otherwise had a deterioration in his physical health. CDOC will dispute that claim, arguing (among other things) that the evidence establishes that although Brooks appears to have been experiencing an ulcerative colitis flare-up upon arrival at Fremont, he was provided with appropriate medication and other medical

---

[1] A medline pass is a pass issued by clinical services that allows inmates who need medications on a set schedule and/or medications that must be taken with food to attend the first chow pull (also called the "medline pull"). A movement pass is less formalized, but generally speaking it is a pass issued by an ADA inmate coordinator to disabled inmates to allow them otherwise restricted movement to accommodate their disabilities.

attention shortly after arrival, and his weight quickly rebounded and stabilized. As such, there was no indication that he needed a medline or movement pass.

In any event, in support of his claim, Brooks has indicated that he may call his mother, Wendy Updegraff a/k/a Vayah Terra ("Updegraff/Terra"). When informed of this intent, counsel for CDOC and counsel for Brooks agreed that Updegraff/Terra would sit for a two-hour deposition,[2] which originally was set for October 21, 2022. However, at that deposition, Updegraff/Terra expressly relied on a set of "notes" – which turned out to be a detailed, single-spaced, 13-page summary of a purported timeline of events (the "Summary Timeline"), and she made other repeated references to relevant documents that she had in her possession. A copy of the Summary Timeline is attached hereto as **Exhibit A**. After approximately 45 minutes, the parties halted her deposition, and counsel for CDOC indicated that they believed that it should be paused until the "notes" and documents in Updegraff/Terra's possession were produced to, and reviewed by, CDOC. Counsel for Brooks agreed, and the detailed summary and more than 4,000 pages of documents were produced to CDOC as supplemental disclosures on or by October 25, 2022. Updegraff/Terra's deposition resumed and was completed on November 11, 2022.

The thousands of pages of documents in Updegraff/Terra's possession proved to be an extensive and highly relevant trove of information, which included hundreds of pages of handwritten notes documenting Updegraff/Terra's communications with Brooks (in which they apparently discussed Brooks's motives and strategy in filing the instant lawsuit), potential attorneys, and CDOC staff members. But one thing was readily apparent from those documents and, especially, the detailed Summary Timeline prepared by Updegraff/Terra. It is obvious that

---

[2] Because there were a number of newly disclosed witnesses in recent months, the parties agreed to limited discovery involving those witnesses, usually consisting of two-hour depositions.

3

she considers herself to be somewhat of an expert on issues relating both to the nature of Brooks's medical condition and the sufficiency of care provided to him, as well as the obligation to reasonably accommodate his condition under the ADA. Indeed, Updegraff/Terra's documents and the detailed Summary Timeline are filled with opinions criticizing the care provided, suggesting care that would have been more appropriate, and opining on what CDOC could or should have done to provide ADA-compliant accommodation.

The problem with all of this is that it constitutes expert opinion, and that is flatly inappropriate. First and foremost, Updegraff/Terra was never disclosed as an expert (retained or otherwise). And even is she had been, she is not qualified to offer that expert opinion. As to her views on Brooks's condition and the care that was or should have been provided to him, Updegraff/Terra is not a doctor or even a nurse or physician's assistant, she has never been to medical school, and there is no indication that she is qualified to provide that sort of medical opinion. And as to her views on CDOC's obligation to reasonably accommodate Brooks under the ADA, she has no certification or training, and she is not an attorney or advocate working in the field. There simply is nothing to suggest that she has anything more than a layperson's understanding of what the ADA does or does not require in terms of reasonable accommodation.

Therefore, Updegraff/Terra should be barred from offering any testimony at trial constituting expert opinion on medical or ADA issues. The Court should issue an order accordingly.

## ARGUMENT

The Federal Rules of Evidence provide for testimony by expert witnesses if such testimony "will assist the trier of fact." Fed. R. Evid. 702. In applying Rule 702, the Court acts in a "gatekeeping role" to ensure that expert testimony "is not only relevant, but reliable."

*Basanti v. United States*, 666 Fed. App'x 730, 733 (10th Cir. 2016) (citing and quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589, 597 (1993)). "As part of this inquiry, district courts must assess whether a witness is qualified 'by knowledge, skill, experience, training, or education' to offer expert testimony." *Id.* (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). Expert testimony must also be relevant; in other words, it must "logically advance a material aspect of the case." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (alteration omitted).

Here, based on materials provided by Updegraff/Terra – notably including the comprehensive Summary Timeline that she prepared in advance of her deposition – it appears that Brooks may attempt to elicit testimony from her that is properly seen as expert opinion under Rule 702. Specifically, CDOC believes that at trial she may opine on various medical issues concerning Brooks's diagnosis or diagnoses and the sufficiency of the treatment thereof provided by CDOC, as well as whether CDOC complied with any reasonable accommodation requirements imposed by the ADA. This would be improper and must be excluded from trial for three principal reasons: (1) Updegraff/Terra has not been disclosed as an expert pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and thus cannot testify in that capacity; (2) she lacks the qualifications and/or expertise to serve in the capacity of a medical expert; and (3) she similarly lacks the qualifications and expertise to serve as an ADA expert. Each of these is discussed below in turn.

**I.     *Updegraff/Terra was not disclosed as an expert pursuant to Rule 26(a)(2).***

First and foremost, Updegraff cannot provide expert testimony and opinion on *either* medical issues or issues concerning technical ADA compliance for a simple reason: Brooks has not disclosed her as an expert as he is required to by Rule 26(a)(2). Specifically, Rule 26(a)(2)

requires the parties to a civil lawsuit to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." *Id.* Rule 37(c) makes the consequences of failing to disclose an expert quite clear: "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.*

In other words, where a party fails to comply with Rule 26(a)(2) and does not disclose an expert prior to the applicable deadline, that party generally will be barred from offering expert opinion and testimony at trial. *See, e.g., Bruce v. Pac. Specialty Ins. Co.*, 755 Fed. App'x 731, 733-34 (10th Cir. 2018) (upholding trial court decision precluding plaintiff from offering expert testimony because he had not disclosed himself as an expert). Therefore, because Updegraff/Terra was not and has not been disclosed as an expert witness, she should be precluded from providing expert opinion and testimony in this case.

## II.     *Updegraff/Terra is not qualified to offer expert testimony on medical issues.*

As explained above, the Summary Timeline produced by Updegraff/Terra contains numerous statements that can only be seen as expert opinion on medical issues. For example, the Summary Timeline states the following:

- Brooks suffered from "GERD, upper GI Gastritis, Hiatal Hernia, IBS" as early as high school (Ex. A, p. 2)'

- In February 2012, Brooks was transferred to a facility (Fremont) that was unable to meet "Treatment requirements for a chronic, debilitating lifetime disease" (*Id.* at p. 4);

6

- Adult diapers were "UNREASONABLE[3]" to address Brooks's purported incontinence due to "public offensive smell, toxic contract with inflamed rectum, duress in proximity with many other inmates while eating" (*Id.* at p. 5);

- Missed meals purportedly due to incontinence issues caused Brooks to "suffer[] malnutrition, continuing malnourishment and weight loss" (*Id.* at p. 6);

- "FACT-DIARRHEA WITHOUT DIETARY REPLACEMENT OF ALLERGIC FOODS, cannot and does not come under control, the symptoms persist and can remain for a lifetime; FOUNDATIONAL INFLAMMATORY ALLERGIC dietary needs were never PROPERLY addressed" (*Id.*);

- "SOAP is a method used by medical providers for medical charting critical information the patient's health" (*Id.* at p. 7);

- Fremont did not have "a proper diagnosis" and was not providing "the required daily management protocols [for Brooks's ulcerative colitis including Ensure supplementation for weight loss, extra gluten free snacks for malnutrition and pain medication" (*Id.*);

- "DAILY MANAGEMENT NEEDS CONTINUE TO BE IGNORED BY FACILITY STAFF" (*Id.* at p. 8);

- Brooks was required to work in the kitchen "WHILE WEAK, IN PAIN AND VERY ILL IN AN ACUTE EXACERBATION FORCED BY CONDITIONS OF NONTREATMENT" (*Id.*);

- Brooks is offered a proctocolectomy procedure and declines it because "the consequences would be massively invasive, risky and life altering: (*Id.*);

- "RADICAL SURGERY IS ONLY USED AS A LAST RESORT AND NOT UNTIL OF UNLESS OTHER LESS INVASIVE TREATMENT MEDICATIONS ARE ATTEMPTED FIRST" (*Id.*);

- Fremont medical staff prescribes Prednisone, but it is "contraindicated by prior medical record overuse: showing dangerous side effects, had to be discontinued. PREDNISONE IS NOT A TREATMENT, ONLY FOR SHORT TERM MANAGEMENT" (*Id*. at pp. 8-9);

- "Clinical Services is nonresponsive with lack of treatment and daily care needs that puts him at risk and is harming his health condition further" (*Id.* at p. 9);

- Brooks refused "to undertake the serious risk and life altering ordeal of surgical removal of his colon…. CDOC DOES NOT DO CORRECTIVE REVERSALS

---

[3] All capitalization emphasis is copied from the Summary Timeline. Bolded or underlined emphasis is omitted.

> for temporary J pouches which proposed, in my own words 'a lifetime sentence to being crippled'" (*Id.* at p. 10);

- "FACTS ON MEDICAL RECORDS SHOW [BROOKS'S] CONDITION OF DETERIORATION AND THE HARM SUFFERED DUE TO LACK OF PROPER MEDICAL CARE" (*Id.*);

- Medical services can be summarized as "INCONSISTENT, UNPREDICTABLE, CONTRADICTORY; NO FOLLOW-UP, NO FOLLOW THROUGH" with "no Continuity of Care ALLOWING MEDICAL DISRUPTIONS THAT COMPLETELY COMPROMISED [BROOKS'S] CHRONIC CARE CONDITION" (*Id.* at p. 11); and

- Fremont and CDOC clinical staff have engaged in "[m]ultiple and repeated incidences ALLOWING inconsistency and gaps in; medications, visits for monitoring and/or adjusting Treatment response, REPEATED Treatment lapses and omissions all of which compromise the effectiveness and success of Treatment, including ongoing denial of daily care needs." (*Id.* at p. 13)

All of these opinions concerning Brooks's health condition and/or the adequacy of the care provided to him are flatly improper. Updegraff/Terra is not a physician, she does not have a medical degree, and there is no evidence that she has any specialized medical training that might qualify her as an expert on ulcerative colitis or the treatment thereof. Indeed, Updegraff/Terra is not even a licensed or registered nurse, who would be limited to providing expert opinion only on nursing standards of care, and not medical issues generally. *See Gordon v. Sunrise Senior Living Servs., Inc.*, No. 08-CV-02299-REB-MJW, 2009 WL 3698527, at *4 (D. Colo. Nov. 5, 2009) (citing cases for the proposition that "it appears clear that a nurse is not qualified to offer a medical diagnosis or opine as to medical causation"); *Harvey v. United States*, No. CIVA 04CV188-WYD-CBS, 2006 WL 1980623, at *5-6 (D. Colo. July 13, 2006) (holding similar).

Notwithstanding the foregoing, Updegraff/Terra has suggested in the past that her education and work experience – she apparently has a master's degree in some psychological field and provided mental health services in the hospital context – qualifies her as a medical expert. This argument would be a nonstarter. First and foremost, Brooks apparently was

8

suffering from ulcerative colitis during his incarceration at Fremont, and not any mental or emotional health issue that a psychologist would be trained to address. More broadly, courts generally are clear that a psychologist is not a medical doctor, and she or he cannot provide expert opinion on purely medical issues under Rule 702. *See, e.g., Edmonds v. Illinois Cent. Gulf R. Co.*, 910 F.2d 1284, 1287 (5th Cir. 1990) ("The question whether stress worsened the plaintiff's coronary artery disease is a medical issue that is plainly beyond this witness's expertise in the field of psychology."); s*ee also Barrett v. Rhodia, Inc.*, 606 F.3d 975, 981-82 (8th Cir. 2010) (psychologist not qualified to provide toxicology opinion).

Therefore, because Updegraff/Terra is not a physician or other medical provider, she should be barred from testifying as to expert medical opinions such as the ones from her Summary Timeline set forth above. Even if she had been disclosed as an expert (and she was not), she is not qualified to be an expert on those sorts of medical issues.

### III. *Updegraff/Terra is not qualified to provide expert opinion on ADA compliance issues.*

Finally, in the Summary Timeline, Updegraff/Terra also provides numerous statements that can only be seen as expert opinions regarding CDOC and Fremont's compliance with ADA accommodation requirements. Specifically, the Summary Timeline states[4]:

- Adult undergarments are an unreasonable accommodations for incontinence because they "impose[] hardship conditions including potential violence by other inmates in proximity to a dirty diaper during mealtimes." (Ex. A, p. 5.);

- Adult undergarments as an accommodation are: "UNREASONABLE – public offensive smell, toxic contact with inflamed rectum, duress in proximity with many other inmates while eating." (*Id.*);

- "Without a 'qualified status' [Brooks's] condition was treated if there were no medical needs and no severe symptoms of disease. 'Reasonable' Accommodation requests were regularly denied without a qualified status that remained undefined

---

[4] In addition to the summary timeline, the thousands of pages of materials provided by Updegraff/Terra contain numerous statements that can only be viewed as purported expert opinion on ADA compliance issues and the ADA generally.

and the word 'reasonable' also remained undefined and subject to nondisclosed direction." (*Id.* at p. 6.);

- "[Brooks] was able to refute the ADA Policy of providing false and misleading information and GET THE FACILITY TO REMOVE THE POSTED ADA POLICY FROM THE INMATE BULLETIN BOARD…." (*Id.* at p. 7.); and

- "Legal Litigation for lack of safety, bodily harm and endangerment is pursued by [Upedgraff/Terra] with an experienced Attorney and outreach is made to the Colorado Cross Disability Coalition under public advocacy; to build and develop a legal case and an advocacy case." (*Id.* at p. 12.)

As was the case with Updegraff/Terra's voluminous medical opinions, she also must be barred from providing purported expert testimony on various ADA compliance issues at trial. There is no indication that Updegraff/Terra has any expertise concerning the ADA and the compliance obligations it places on a government agency like CDOC. She is not an attorney working in the ADA field, she does not have any ADA-related certifications from the organizations that provide such credentials, and she has not worked as an ADA coordinator or similar position that might give her that expertise. Put simply, there is no suggestion that she has met *any* of the attributes that courts typically look to when determining that a purported ADA expert satisfies the requirements of Rule 702. *Compare Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1358-59 (S.D. Fla. 2015) (describing an ADA expert's nearly 20-year history of developing expertise by studying, taking classes, attending presentations, and giving speeches on ADA issues, and cataloguing authorities finding a proposed ADA expert to be qualified).

Therefore, as was the case with respect to the purported expert medical opinions offered by Updegraff/Terra, she lacks the knowledge and expertise sufficient to provide expert testimony concerning the adequacy of CDOC's compliance with any reasonable accommodation requirements imposed by the ADA. She should be barred from providing expert opinion on that issue at trial as well.

## CONCLUSION

WHEREFORE, for the foregoing reasons, CDOC respectfully request that the Court grant the instant Motion in Limine and hold that Updegraff/Terra is not qualified to offer expert testimony pursuant to Rule 702 on any medical or ADA compliance issues.

Respectfully submitted this 28th day of November, 2022.

PHILIP J. WEISER
Attorney General

/s/ *Joshua G. Urquhart*
JOSHUA G. URQUHART*
Senior Assistant Attorney General
KELLEY M. DZIEDZIC*
RACHEL M. LIEB*
Assistant Attorney Generals
*Counsel of Record
Civil Litigation & Employment Law Section
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6000
Facsimile: 720-508-6032
E-mail:
joshua.urquhart@coag.gov
kelley.dziedzic@coag.gov
rachel.lieb@coag.gov
*Attorneys for Colorado Department of Corrections*

**CERTIFICATE OF SERVICE**

      This is to certify that on November 28, 2022, I have duly served the within MOTION IN LIMINE RE: INADMISSIBILITY OF MEDICAL OR ADA EXPERT TESTIMONY PROVIDED BY WENDY UPDEGRAFF/VAYAH TERRA, addressed as follows:

Kevin D. Homiak
kevin@homiaklaw.com

Athul K. Acharya
athul@pubaccountability.org

*Attorneys for Plaintiff Jason Brooks*


Adrienne Sanchez, CDOC
Associate Director, Legal Services

                                                s/ *Elle Di Muro*