IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02894-SKC

JASON BROOKS,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

---

### MOTION IN LIMINE RE: INADMISSIBILITY OF TESTIMONY BY TROY BROWNLOW CONCERNING JASON BROOKS'S INCARCERATION AT BENT COUNTY CORRECTION FACILITY

---

Defendant Colorado Department of Corrections ("CDOC"), by and through the Colorado Attorney General, respectfully files the within Motion in Limine re: the Inadmissibility of Testimony by Troy Brownlow Concerning Jason Brooks's Incarceration at Bent County Correctional Facility in anticipation of the jury trial set in this action, which as of this writing is set to begin on December 12, 2022.

**Certificate of Conferral**. Pursuant to D.C.COLO.Civ.R. 7.1(b)(1), CDOC conferred with counsel for Plaintiff Jason Brooks. Counsel for Brooks indicated that he opposes the relief sought herein.

### STATEMENT OF THE CASE

Brooks is a paroled inmate who was formerly in the custody of CDOC. He was charged with 24 counts of securities fraud in 2009. In 2010, Brooks pleaded guilty to four of those counts (two counts of Securities Fraud – Making an Untrue Statement, and two counts of Securities Fraud – Fraud or Deceit); the remaining charges were dismissed as part of his plea

1

deal. Essentially, according to his plea, Brooks acknowledged that he deceived victims into investing in a purported venture involving an exclusive distribution deal with a Japanese electronics manufacturer, when no such deal existed, and that he ultimately was able to defraud those investors out of more than $10 million. Brooks was sentenced to four consecutive eight-year sentences (for a total sentence of 32 years), and restitution in the amount of $5,131,760.95 was awarded. He was then taken into the custody of CDOC.

The sole live claim in the instant lawsuit involves a period of time from 2012 through 2018, in which Brooks was incarcerated at Fremont Correctional Facility ("Fremont"). Brooks contends that he suffers from ulcerative colitis, and by the time he was transferred to Fremont, the condition had progressed to the point where he was experiencing uncontrollable incontinence. Brooks claims that this ulcerative colitis constitutes a disability for the purposes of the Americans with Disabilities Act (the "ADA"), and that CDOC failed to accommodate that disability when it declined to provide him with a medline or movement pass[1] to allow him to access meals at the Fremont chow hall on a more flexible schedule. Brooks further contends that the failure to issue him such a pass caused him to miss numerous meals, and that as a result of those missed meals, he lost a significant amount of weight and otherwise had a deterioration in his physical health. CDOC will dispute that claim, arguing (among other things) that the evidence establishes that although Brooks appears to have been experiencing an ulcerative colitis flare-up upon arrival at Fremont, he was provided with appropriate medication and other medical

---

[1] A medline pass is a pass issued by clinical services that allows inmates who need medications on a set schedule and/or medications that must be taken with food to attend the first chow pull (also called the "medline pull"). A movement pass is less formalized, but generally speaking, it is a pass issued by an ADA inmate coordinator to disabled inmates to allow them otherwise restricted movement to accommodate their disabilities.

attention shortly after arrival, and his weight quickly rebounded and stabilized. As such, there was no indication that he needed a medline or movement pass.

In any event, one witness listed by Brooks as likely to testify is Troy Brownlow, who was Brooks's cellmate at Bent County Correctional Facility ("Bent County") for about ten months in 2011 and 2012 *prior* to Brooks being transferred to Fremont in early February 2012. Brownlow also was Brooks's cellmate at Sterling Correctional Facility in 2018 after Brooks was transferred from Fremont.[2] Based on his deposition testimony, it appears that Brownlow will testify about Brooks's health condition at Bent County, based on his observations of, and conversations with, his then-cellmate. Specifically, CDOC anticipates that Brownlow will testify that during the time that Brooks was his cellmate, he purportedly suffered from frequent and sometimes uncontrolled incontinence, and he experienced substantial weight loss, ostensibly as a result. It also is anticipated that Brownlow will testify about the allegedly inadequate care provided to Brooks at Bent County during that same earlier time period.

The problem is that this case involves Brooks's incarceration at *Fremont*, and not Bent County. Brooks claims that CDOC failed to provide him reasonable accommodation for a disability while he was incarcerated at the former facility, and not the latter. And indeed, the first time that Brooks actually requested the accommodation at issue – a medline or movement pass – was in March 2013, and that accommodation was not finally refused until May 2013. A Second, substantially similar accommodation was requested through the grievance process in June 2013, and it was denied in August 2013. That means that those events occurred *more than a year* after Brooks was incarcerated at Bent County, and Brownlow could have been able to observe his health condition.

---

[2] Testimony reflecting that period of time is not affected by this Motion in Limine.

Nor could it be argued that there was no change in Brooks's condition during that 13- or 15-month time period, so that his health status in February 2012 is somehow probative of what it was in March through August in 2013.  To the contrary, Brooks's medical record indicates that during that interval, Brooks had experienced an ulcerative colitis flare-up that began at Bent County but continued to worsen at Fremont before he began improving; his recorded weights reflect the flare-up, deterioration and recovery, and show that he went from 150 pounds at the time of transfer, to a low of 142 pounds after a period of weeks at Fremont, back to slightly less than 165 pounds in the spring and summer of 2013.  This is consistent with what Brooks was telling his treating physicians during that time period – *i.e.*, that his condition was being well-managed, and he was feeling better than he had in years.  Put simply, the evidence is clear Brooks's health status and condition in the spring and summer of 2013 bore no resemblance to what Brownlow would have observed more than a year earlier at Bent County, and any such testimony about Brooks's condition at that facility would be irrelevant to what it was at the relevant time in question.

Lastly, even if the Court disagrees and feels that there is some marginal or tangential relevance, it is outweighed by the prejudice and confusion it might cause with a jury.  It is possible that Brownlow's anticipated testimony that Brooks was suffering considerably at Bent County, and he failed to recieve adequate or appropriate care, might paint CDOC in an unfairly negative light, despite the fact that whether or not Brooks received appropriate care is irrelevant to his current ADA claim.  In a similar vein, a jury might be confused by such testimony and think that whether or not appropriate care was provided *is* relevant to the ADA claim that is before it.  In either case, that prejudice or confusion easily outweighs any conceivable relevance of Brownlow's anticipated testimony.

Therefore, Brownlow should be barred from offering any testimony at trial concerning Brooks's health condition or status during the time that he was cellmates with Brooks at Bent County, which would be irrelevant to Brooks's condition in the spring and summer of 2013. The Court should issue an order accordingly.

## ARGUMENT

Under Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." *Id.*; *accord Scherbarth v. Woods*, No. 1:16-CV-02391-SKC, 2022 WL 1102529, at *1 (D. Colo. Apr. 13, 2022). Evidence will be relevant if it is generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *accord Scherbarth*, 2022 WL 1102529, at *1. "Irrelevant evidence is not admissible." Fed. R. Evid. 402; *accord Scherbarth*, 2022 WL 1102529, at *1.

Here, based on his deposition testimony, CDOC anticipates that Brownlow will testify at trial that during the ten-month period in 2011 and 2012 when he was Brooks's cellmate (before Brooks was transferred to Fremont, Brooks was suffering from frequent, uncontrollable incontinence, and as a result, he lost significant weight during that time period. As noted above, however, this testimony is not relevant to Brooks's ADA claim, which involved events that occurred at Fremont), more than a year after Brooks's transfer from Bent County. As a result, any testimony regarding Brooks's health condition and status at the earlier facility would be irrelevant. This irrelevance is explained in detail below.

First, it is crucial to point out what the relevant time period is. Brooks and many of his witnesses are likely to focus on early 2012, around the time that he was transferred from Bent County to Fremont. At that point, CDOC agrees that there is some evidence suggesting that Brooks's health condition was deteriorating – potentially as a result of an ulcerative colitis flare-up – and he was losing weight. *But that time period is not relevant to his current ADA claim.* In that ADA claim, Brooks alleges that as a reasonable accommodation for his disability (ulcerative colitis), Brooks needed a medline or movement pass that would have allowed him more flexibility to attend meals, and as a result of the failure to provide it, Brooks missed meals and lost weight. Yet that request for a medline/movement pass was not made until *March 2013*, and it was not finally denied through the Fremont/CDOC grievance process until *May 2013*. *See* Grievances, attached hereto as **Exhibit A**. Brooks made a second grievance request for the same relief in June 2013, which was not finally denied until August 2013. *Id*. Therefore, unless Brooks's health status in spring and summer 2013 was largely unchanged from late 2011 and early 2012 – more than a year prior – then evidence showing what it was during the earlier period will be irrelevant to what it was during the latter.

And the evidence is clear that Brooks was at an entirely different place health-wise in the time period from March to August in 2013 than he had been in February 2012. As alluded to above, at the time that Brooks was transferred to Fremont from Bent County, he appears to have been at the start of an adverse health event (an ulcerative colitis flare-up) that would continue after his transfer, and would see him go from 150 pounds at the time of transfer, to 142 pounds at the lowest point in March 2012. *See* CDOC Ambulatory Health Record, dated March 16, 2012, attached hereto as **Exhibit B**. But at that point, Brooks was prescribed medication, and his weight rebounded and began to climb. By April 2013, he weighed in at 164 pounds, and he was

approximately the same weight (163.4 pounds) in June 2013.  In other words, in the interim between when Brownlow would have last seen Brooks at Bent County to when Brooks requested the medline/movement pass that was subsequently denied, Brooks had experienced the bulk of an ulcerative colitis flare-up that saw him lose significant weight, he had been treated for that flare-up, and his weight rebounded and climbed to a significantly higher level than it had been at the time of his transfer.  In light of those intervening events, what Brooks looked and felt like at Bent County in late 2011 and early 2012 is irrelevant to his health status in the spring and summer of 2013.

      Notably, the change in Brooks's health status from February 2012 to March through August in 2013 is consistent with what he was telling the providers who were treating him for his ulcerative colitis.  For example, by July 18, *2012* – about five months after his transfer to Fremont – Brooks had been prescribed medication, his weight rebounded to 168 pounds, and he told his treating gastroenterologist (Atul Vahil) that his condition was under good control.  *See* Progress Notes, dated July 18, 2012, attached hereto as **Exhibit C**.  In April 2013, he told his CDOC treating physician that he was "doing as well as he ever ha[d]."  *See* Department of Corrections Ambulatory Health Record, dated April 12, 2013, attached hereto as **Exhibit D**.  This was echoed to the gastroenterologist in July 2013, when Brooks stated that "this was the best he had felt in years."  Progress Notes, dated June 11, 2013, attached as **Exhibit E**.  This picture of markedly improved health is fundamentally different from what Brooks's health status was in February 2012 when he was transferred to Fremont, and Brownlow's testimony about that health status during the earlier time says nothing about the time period relevant to his ADA claim.  It should be excluded under Rule 402.

Finally, to the extent that Brownlow's ostensible account of Brooks's condition in late 2011 and early 2012 when they were cellmates has some marginal relevance to Brooks's ADA claim, that relevance is outweighed by the potential that the evidence would cause unfair prejudice and/or confuse the jury, and thus should be excluded under Rule 403. As to the former, it is important to note that when Brooks initially brought his lawsuit, it included one or more claims pursuant to 42 U.S.C. § 1983 that CDOC violated his Eighth Amendment rights by being deliberately indifferent to the treatment of his ulcerative colitis. That claim was subsequently disposed of through dispositive motions practice. But it is possible that Brooks will attempt to "backdoor" this sort of relatively inflammatory § 1983 failure-to-treat theory through his sole surviving ADA claim in an effort to create sympathy with the jury by arguing that he was suffering considerably from his ulcerative colitis, and CDOC did not provide him with adequate care. Brownlow's anticipated testimony concerning his observations of, and communications with, Brooks at Bent County would only play into that narrative – essentially, Brownlow will say that Brooks was experiencing severe symptoms (uncontrollable incontinence), and CDOC did not provide appropriate care for it. The only conceivable relevance of that sort of testimony would be to shed light on Brooks's health status prior to his incarceration at Fremont, yet the main takeaway for a jury very easily could be that CDOC did not provide adequate health care to an individual in its custody.

Yet as discussed above, Brooks was in a very different place health-wise in spring and summer in 2013 than he previously was in February 2012 and the months before that, when Brownlow would have last seen him. Whatever relevance Brownlow's testimony might have – and again, CDOC believes that it is *none*, but at most it would be highly attenuated – it is substantially outweighed that CDOC might be unfairly prejudiced by an account that it failed to

provide sufficient care to a sick inmate in its custody, or that a jury might be confused into thinking that the relevant issue in the case is whether CDOC provided appropriate care to Brooks, and not whether it failed to provide a reasonable accommodation pursuant to the ADA. That testimony therefore should be barred under Rule 403, even if the unlikely event that the Court believes that it might have some marginal or tangential relevant to the issues involved in Brooks's ADA claim.

## CONCLUSION

WHEREFORE, for the foregoing reasons, CDOC respectfully request that the Court grant the instant Motion in Limine and hold that any testimony by Troy Brownlow concerning Jason Brooks's health condition and status while the two were cellmates at Bent County is inadmissible.

Respectfully submitted this 28th day of November, 2022.

PHILIP J. WEISER
Attorney General

/s/ *Joshua G. Urquhart*
JOSHUA G. URQUHART*
Senior Assistant Attorney General
KELLEY M. DZIEDZIC*
RACHEL M. LIEB*
Assistant Attorney Generals
*Counsel of Record
Civil Litigation & Employment Law Section
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6000
Facsimile: 720-508-6032
E-mail:
joshua.urquhart@coag.gov
kelley.dziedzic@coag.gov
rachel.lieb@coag.gov
*Attorneys for Colorado Department of Corrections*

## CERTIFICATE OF SERVICE

This is to certify that on November 28, 2022, I have duly served the within MOTION IN LIMINE RE: INADMISSIBILITY OF TESTIMONY BY TROY BROWNLOW CONCERNING JASON BROOKS'S INCARCERATION AT BENT COUNTY CORRECTION FACILITY, addressed as follows:

Kevin D. Homiak
kevin@homiaklaw.com

Athul K. Acharya
athul@pubaccountability.org

*Attorneys for Plaintiff Jason Brooks*


Adrienne Sanchez, CDOC
Associate Director, Legal Services

s/ *Elle Di Muro*