IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02894-SKC

JASON BROOKS,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

**PLAINTIFF JASON BROOKS'S TRIAL BRIEF REGARDING HIS PROPOSED JURY INSTRUCTIONS**

Per Section D.2. of the Court's Consent Case Practice and Trial Preparation Order, Plaintiff Jason Brooks respectfully submits this trial brief regarding his proposed jury instructions. Mr. Brooks respectfully requests the Court (i) instruct the jury that intentional discrimination under the ADA can be shown by deliberate indifference, and (ii) allow the jury to answer a special interrogatory to find that sovereign immunity was abrogated under the second step of *United States v. Georgia*.

## **ARGUMENT**

**I.   The Court Should Instruct the Jury that Intentional Discrimination under the ADA Can be Shown by Deliberate Indifference**

First, the Court should include a jury instruction on the deliberate indifference standard for intentional discrimination under the Americans with Disabilities Act. The Tenth Circuit and the District of Colorado have repeatedly held that intentional discrimination for a failure-to-accommodate claim under the ADA can be shown by "a defendant's *deliberate indifference* to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally

protected rights." *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1298 (10th Cir. 2016) (emphasis added); *Cropp v. Larimer Cnty.*, 793 F. App'x 771, 780 (10th Cir. 2019) ("[A] plaintiff can establish intentional discrimination by presenting evidence that . . . the defendant acted with *deliberate indifference* to the strong likelihood that pursuit of its questioned policies would likely result in a violation of federally protected rights." (emphasis added and brackets and quotation marks omitted)). This should come as no surprise, given that the Tenth Circuit had previously applied the same deliberate indifference standard to claims for intentional discrimination under the Rehabilitation Act. *See Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1228–29 (10th Cir. 2009) ("[I]ntentional discrimination can be inferred from a defendant's *deliberate indifference* to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." (emphasis added)).[1]

Magistrate Judge Neureiter's decision in *Freeman* is instructive. There, as here, the plaintiff alleged that the CDOC's refusal to provide her with an offender care aide for thirty days violated Title II of the ADA because her arthritis prevented her from accessing the cafeteria and the medication dispensary line without assistance. *See Freeman v. Colorado Dep't of Corr.*, No. 16-CV-02181-NRN, 2019 WL 1296631, at *3 (D. Colo. Mar. 21, 2019) (Neureiter, M.J.). Like Mr. Brooks, the plaintiff in *Freeman* offered evidence that the defendants' refusal to provide her a reasonable accommodation forced her to miss her medications "many times" and to miss meals on seven occasions. *Id.* *3. The CDOC in *Freeman* argued that summary judgment was warranted

---

[1] The Tenth Circuit's decision in *Hamer* did not overrule this line of cases. *See Hamer v. City of Trinidad*, 924 F.3d 1093 (10th Cir. 2019). Nor could it, given that *Cropp* was decided six months after *Hamer*. Instead, *Hamer* merely confirmed the unremarkable proposition that the Tenth Circuit "requires proof of intentional discrimination before a plaintiff can recover compensatory damages under [the Rehabilitation Act]" and has "suggested that as much is required under Title II [of the ADA]." *Id.* at 1108. *Hamer* said nothing about *how* such intentional discrimination could be shown, nor did it hold that evidence of deliberate indifference is sufficient. As a result, the Tenth Circuit's decisions in *J.V.* and *Cropp* control here.

because there was no evidence of intentional discrimination, but Judge Neureiter disagreed and denied the CDOC's motion. *See id.* \*5.

Judge Neureiter first explained that "intentional discrimination does *not* require a showing of personal ill will or animosity toward the disabled person," but can instead "be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Id.* (internal quotation marks and citations omitted) (emphasis added). He further stated that "[d]eliberate indifference in the context of intentional discrimination comprises two prongs: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* (internal quotation marks and citations omitted). He determined that, "[i]n light of the numerous disputed material facts regarding which accommodations were necessary and which were provided [to the plaintiff], . . . summary judgment is not appropriate." *Id.*

*Freeman* applies with equal force here. Mr. Brooks has brought the exact same claim against the CDOC as the plaintiff in *Freeman*, and the same standard for intentional discrimination should apply. At the Final Pretrial Conference, the Court indicated that it would likely use the "standard elements" for intentional discrimination that the CDOC had submitted with its proposed jury instructions, and that it would consider giving an instruction on the deliberate indifference standard. The CDOC's proposed jury instructions do not include any explanation of the relevant standard set forth in *Freeman*, and the jury cannot properly evaluate the elements of Mr. Brooks's ADA claims without an instruction explaining that intentional discrimination can be shown by evidence deliberate indifference.

As a result, the jury should be instructed that Mr. Brooks may prove the fourth element of his ADA claim—*i.e.*, that the Department of Corrections intentionally discriminated against him—

3

by showing either:

1. The Department of Corrections acted with personal ill will or animosity towards Mr. Brooks; or

2. The Department of Corrections knew that a harm to Mr. Brooks's federally protected rights under the ADA was substantially likely and failed to act upon that likelihood.

## II. The Court Should Allow the Jury to Determine Whether Sovereign Immunity Has Been Abrogated under the Second Step of *United States v. Georgia*

Second, the Court should allow the jury to decide whether sovereign immunity has been abrogated under the second step of *United States v. Georgia*. The Parties agree that the question of whether sovereign immunity applies "is not a purely legal issue," but is instead "a mixed question of law and fact." (Defendants' Mot. to Dismiss, ECF 316 (filed Jan. 14, 2022) at 5.) Specifically, sovereign immunity can be abrogated under the second step of *United States v. Georgia* if the CDOC violated the Eighth Amendment by failing to provide Mr. Brooks meaningful access to prison meals. *United States v. Georgia*, 546 U.S. 151, 158–59 (2006).

An "application-of-legal-standard-to-fact sort of question . . ., commonly called a mixed question of law and fact, has typically been resolved by juries." *United States v. Gaudin*, 515 U.S. 506, 512 (1995) (quoting J. Thayer, Preliminary Treatise on Evidence at Common Law 194, 249–250 (1898) (internal quotation marks omitted)). Juries usually decide Eighth Amendment conditions of confinement claims, and there's no reason why the jury would be incapable of deciding a similar mixed question of law and fact here. "[I]nsofar as [the Court] is concerned that [the] jury may improperly apply the relevant legal standard, the solution is to craft careful jury instructions that make that standard clear." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 424 (2015).

As the Tenth Circuit held on appeal, "[t]he question of whether a government entity violated an individual's Eighth Amendment rights is *entirely objective*." *Brooks v. Colorado Dep't*

4

*of Corr.*, 12 F.4th 1160, 1172 n.13 (10th Cir. 2021) (emphasis added). This objective standard can be met where prison conditions "deprive an inmate of the minimal civilized measure of life's necessities"—like "adequate food, clothing, shelter, and medical care." *Id.* at 1173. In other words, sovereign immunity can be abrogated under the second step of *United States v. Georgia* if Mr. Brooks was denied "one of life's basic necessities." *Foster v. Runnels*, 554 F.3d 807, 812-13 (9th Cir. 2009). Thus, the jury can simply be asked in a special interrogatory: "Was Mr. Brooks deprived of one of life's basic necessities, such as adequate food, clothing, shelter, or medical care?" If the jury answers "yes" to this special interrogatory, then sovereign immunity is abrogated under the second step of *United States v. Georgia*, and there's no need to proceed to the third step.

Only if the jury answers "no," will it be necessary to proceed to the third step of *United States v. Georgia* and evaluate the *City of Boerne* factors. Although the jury could likely identify the "nature of the constitutional right at issue," it is admittedly ill-equipped to consider the remaining two *City of Boerne* factors: (1) the extent to which Congress's remedial statute was passed in response to a documented history of relevant constitutional violations; and (2) whether the congressional statute is congruent and proportional to the specific class of violations at issue, given the nature of the relevant constitutional right and the identified history of violations. *See Guttman v. Khalsa*, 669 F.3d 1101, 1113 (10th Cir. 2012). The Court is in a far better position to evaluate these factors and determine whether sovereign immunity is abrogated under the third step of *United States v. Georgia* and issue findings of fact and conclusions of law regarding the *City of Boerne* factors. It can do so with the benefit of additional supplemental briefing from the Parties, and only if the jury finds in Mr. Brooks's favor on his ADA claim but answers "no" to the special interrogatory described above.

## **CONCLUSION**

For the reasons set forth above, Mr. Brooks respectfully requests the Court (i) instruct the jury that intentional discrimination under the ADA can be shown by deliberate indifference, and (ii) allow the jury to answer a special interrogatory to find that sovereign immunity was abrogated under the second step of *United States v. Georgia*.

Dated: November 28, 2022

Respectfully submitted,

*s/ Kevin D. Homiak*
Kevin D. Homiak
HOMIAK LAW LLC
1001 Bannock Street, Suite 238
Denver, Colorado 80204
(505) 385-2614
kevin@homiaklaw.com

and

Athul K. Acharya
PUBLIC ACCOUNTABILITY
P.O. Box 14672
Portland, OR 97293
503-383-9492
athul@pubaccountability.org

*Attorneys for Plaintiff Jason Brooks*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 28, 2022, I electronically served the foregoing **PLAINTIFF JASON BROOKS'S TRIAL BRIEF REGARDING HIS PROPOSED JURY INSTRUCTIONS** on the following individuals at the following email addresses:

- **Joshua G. Urquhart**
  joshua.urquhart@coag.gov

- **Rachel Lieb**
  rachel.lieb@coag.gov

- **Kelley Dziedzic**
  kelley.dziedzic@coag.gov


  *s/ Kevin Homiak*