IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02894-SKC

JASON BROOKS,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

---

**RESPONSE TO PLAINTIFF JASON BROOKS'S MOTION IN LIMINE #2 RE:
THE UNDERLYING FACTS OF HIS 2010 CONVICTIONS AND HIS POST
CONVICTION MOTIONS AND CHALLENGES TO HIS CONVICTIONS**

---

Defendant Colorado Department of Corrections ("CDOC"), by and through the Colorado Attorney General, respectfully files the within Response to Plaintiff Jason Brooks's Motion in Limine #2 re: the Underlying Facts of His 2010 Convictions and His Post-Conviction Motions and Challenges to His Convictions ("Motion #2"). CDOC states the following in support thereof:

### INTRODUCTION

The parties' various Motions in Limine and Trial Briefs in the above-captioned matter have discussed the background of, and facts surrounding, this case at length, and in the interest of brevity, CDOC will not rehash it in this Response. As for the specific issue raised by Motion #2, by way of summary, as part of his case-in-chief at the upcoming trial, Brooks is expected to provide extensive testimony concerning virtually all aspects of his sole remaining Americans with Disabilities Act ("ADA") claim – *e.g.*, the severity and progression of his ulcerative colitis,

1

the sufficiency (or lack thereof) of any accommodations provided for it, his communications with CDOC staff in an effort to address his condition, and a myriad of other relevant issues. It is no exaggeration to say that Brooks plans to be his own star witness.

The problem for Brooks is that he has a long and well-established history of financially motivated dishonesty and deceitful conduct. Indeed, the entire reason that he was in the position to need CDOC to accommodate a purported disability – the whole basis for his only claim – is that in 2010 he pleaded guilty to four counts of securities fraud (consisting of two counts each of Securities Fraud – Making an Untrue Statement and Securities Fraud – Fraud or Deceit). As part of his plea deal, twenty other counts of securities fraud were dismissed, he was sentenced to four consecutive eight-year sentences in prison, and restitution was imposed in the amount of $5,131,760.95; at that point he was taken into the custody of CDOC. Put simply, at least until he was convicted in 2010, Brooks in no small part made his living by lying to people and stealing their money. Obviously, that presents a potentially steep hurdle for him to overcome if he wants a jury to believe his testimony.

Brooks's Motion #2 is his effort to lower that bar. In it, he concedes that under Rule 609 of the Federal Rules of Evidence, CDOC can inquire into the number of Brooks's prior convictions, the nature of each of the crimes charged, and the date and time of each conviction. CDOC agrees with that assessment. But then Brooks goes on to argue that CDOC can go no further than that. He contends that CDOC should be precluded from asking about the number or identity of victims (including any family members), the underlying facts of his convictions, or – probably most importantly for this Response – the restitution awarded against him.

It may come as somewhat of a surprise, but CDOC does not entirely disagree with Brooks concerning the scope of what is admissible under Rule 609. As set forth in its own Motion in Limine, and in the Response to Brooks's Motion in Limine #1, CDOC concurs that under Rule 609, only the "essential facts" of covered convictions are admissible – the crimes committed, the dates of the offenses and convictions, and the punishment imposed. The biggest area of disagreement on this issue focuses on the restitution imposed on Brooks. Brooks argues – by way of a single reference in the text of his Motion #2, and then more extensively in an accompanying footnote – that this restitution amount is not admissible evidence under Rule 609. That is perfectly understandable; if a jury learns that that he owes over $5 million dollars to his victims, then they surely would begin to understand the scope of his fraud in a way that merely learning of his conviction of four counts of securities fraud cannot fully convey.

Understandable as it is, though, the argument is inconsistent with the well-established law in the Tenth Circuit. Opinions from that court are clear that Rule 609 permits evidence to be admitted concerning the punishment associated with a covered felony conviction generally, and not just the fact that Brooks was sentenced to prison for a felony. And the law in the Tenth Circuit is equally clear that a criminal sentence necessarily includes any restitution component. Moreover, despite Brooks's protestations to the contrary, the amount of restitution in this case is *highly* relevant to efforts to impeach his credibility; if a jury learns that not only did he lie and steal money from his victims, but he did so to a degree where he managed defraud them out of millions of dollars, then they will be even less likely to view his testimony as credible than if they are merely told the nature of his convictions. Therefore, based on the foregoing, CDOC should be permitted elicit testimony from Brooks during cross-examination about the amount of

restitution imposed as a result of his securities fraud convictions (in addition to the other essential facts of those convictions).

There are two other issues that must be briefly addressed. First, while the admissibility of the restitution imposed on Brooks may be the main focus of the parties' disagreement over what is allowed in under Rule *609*, there likely may be further dispute over what can be admitted under Rule *608*. As explained in CDOC's Motion in Limine on this issue, CDOC believes that the underlying details concerning Brooks's conduct constituting the fraud in question – at least with respect to the securities fraud counts for which he was not convicted – are admissible to show his character for untruthfulness. However, because Brooks's Motion #2 does not address that issue, and because he no doubt will assert his opposition to it in his response to CDOC's Motion in Limine, this Response will not address the Rule 608 admissibility issue in any detail.

Finally, Brooks's Motion #2 seeks to preclude cross-examination concerning his various post-conviction filings in the Colorado state courts. While CDOC takes no position on the admissibility of such evidence, it represents that it has no intention of seeking to admit that evidence unless and until Brooks himself puts his post-conviction motions at issue in the case.

## ARGUMENT

I.   ***The essential facts of Brooks's security fraud convictions – including the specific charges convicted of, the dates of conviction and underlying crimes, and the sentence imposed,* including any restitution amount *– are admissible pursuant to Rule 609.***

The parties appear to agree that Rule 609 governs the admissibility of relevant information concerning Brooks's criminal convictions. In that regard, subsection (a) of that evidentiary rule states in relevant part:

> The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
> > (A) *must* be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant.

*Id.* (emphasis added). Notably, there is no requirement in the rule that covered felony convictions constitute a crime of dishonesty; a felony conviction that falls within the scope of Rule 609 is presumptively admissible, subject to Rule 403 balancing.[1] *See Al-Turki v. Robinson*, No. 10-CV-02404-WJM-CBS, 2015 WL 6464411, at *6 (D. Colo. Oct. 27, 2015) ("As all of the felony convictions at issue here fall within the scope of Rule 609(a)(1), they are all presumptively admissible for purposes of impeachment."); *see also United States v. Smalls*, 752 F.3d 1227, 1240 (10th Cir. 2014) (characterizing the "essential facts" concerning a conviction encompassed by Rule 609 as "presumptively admissible").

Despite the presumptive admissibility of certain convictions under Rule 609, that does not mean that any and all information concerning a criminal conviction under that rule will be admissible at trial: "[o]rdinarily, it is improper for the prosecution to examine into the details of the crime for which the accused was convicted." *United States v. Wolf*, 561 F.2d 1376, 1381 (10th Cir. 1977); *accord United States v. Commanche*, 577 F.3d 1261, 1270-71 (10th Cir. 2009) (quoting *Wolf*). As the Seventh Circuit noted in the *Wilson* decision so heavily relied upon by Brooks in his Motion in Limine No. 1, the "sordid details" of a crime like murder are – unless related to a witness's credibility – too prejudicial to warrant admission. *See* 6 F.3d at 1236.

---

[1] Rule 609(b) exempts certain convictions for which the date of conviction or the period of incarceration – whichever is later – occurred more than ten years ago, except for crimes of dishonesty. Because Brooks was serving a prison sentence as recently as 2021, it does not apply.

But that raises an important question: what is admissible? In that regard, the Tenth Circuit has answered this question by explaining that "[t]he well-settled rule in this circuit is that the permissible scope of cross-examination under Rule 609 extends to the essential facts of convictions, the nature of the crimes, and the punishment." *Smalls*, 752 F.3d at 1240 (citing *Commanche*, 577 F.3d at 1270-71 and *Wolf*, 561 F.2d at 1381); *accord United States v. Howell*, 285 F.3d 1263, 1267 (10th Cir. 2002) (holding same); *United States v. Albers*, 93 F.3d 1469, 1479-80 (10th Cir. 1996) (same).

As noted above, there appears to be at least some agreement between the parties as to what is admissible about Brooks's convictions under Rule 609. Specifically, the parties seem to agree that the specific charges for which Brooks was convicted are admissible, as are the dates of the convictions and the sentences of incarceration imposed. CDOC also believes that the dates of the underlying offenses are admissible; it is unclear from Brooks's Motion #2 whether he would agree with that proposition, though it seems difficult to believe that the "general nature" of the crimes charged would not include when they were committed. However, there is one significant area of disagreement: the amount of restitution. CDOC believes that the restitution award imposed on Brooks as part of his securities fraud convictions is admissible. In a passing reference in the text supported by a lengthy footnote, Brooks disagrees.

As discussed above, the reason for the disagreement is understandable – once a jury learns that Brooks stole millions of dollars from his victims, the massive and profound scope of his fraud will become readily apparent to it. Brooks no doubt is concerned that when a jury learns how extensive and costly his lies were, it will view anything that he says with significant

skepticism. But that is the point. When assessing Brooks's credibility, the jury *needs* to know that information. It *needs* to know the massive scope of his previous dishonesty.

In any event, in his footnote, Brooks seems to base his argument on that his restitution amount is inadmissible on his interpretation of *U.S. v. Albers*, in which the Tenth Circuit considered the precise question of what is admissible under Rule 609; it noted that "the prior conviction, its general nature, and punishment of felony range were fair game." *Id.* at 1480. It is not entirely clear what Brooks believes that this allows in, but he clearly thinks that it excludes restitution. Brooks further argues that because the purpose of Rule 609 is to allow a party to impeach a witness's credibility, the restitution awarded with respect to a particular conviction is irrelevant.

Both of these arguments must be rejected. As for the idea that the amount of restitution imposed on Brooks has no bearing on his credibility, it makes no sense. The fact that a witness has been convicted of fraud normally bears heavily on his or her credibility. *See, e.g., Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993). Where the scope of the fraud is as pervasive as Brooks's scheme to steal millions of dollars from his victims, as one court in the District of Colorado has observed when assessing the credibility of a witness, "the massive fraud perpetrated [by the witnesses] speaks for itself." *Fed. Trade Comm'n v. Dalbey*, No. 11-CV-1396-RBJ-KLM, 2014 WL 7403281, at *2 (D. Colo. Dec. 29, 2014), *judgment entered*, No. 11-CV-1396-RBJ-KLM, 2015 WL 1061502 (D. Colo. Mar. 6, 2015) (citing massive fraud by witnesses as the basis for viewing them as non-credible); *see also Museum Boutique Intercontinental, Ltd. v. Picasso*, 880 F. Supp. 153, 162 n. 11 (S.D.N.Y. 1995) (noting that prior massive tax fraud rendered a witness's credibility "very suspect"). The amount of restitution

imposed as part of Brooks's sentence will help inform the jury that his fraud and deceit was not just isolated or a one-off or minor occurrence, but instead, it was pervasive and massive in scope. That absolutely is relevant to impeachment of his credibility.

Moreover, Brooks's interpretation of *Albers* is equally misguided, for two reasons. First, Brooks ignores the broader language in *Albers* and the other Tenth Circuit opinions (cited above and discussed at length in CDOC's Response to Motion in Limine No. 2) permitting cross-examination on the "punishment" imposed in connection with a Rule 609 conviction generally, and not including any specific limitation. That alone should defeat his proposed narrow construction of Rule 609.

But even setting that aside, Brooks cites language from the opinion indicating that only evidence that "punishment 'of felony range'" is admissible under Rule 609. He suggests that this means that CDOC should only be permitted to ask Brooks if the sentence that he received was "in 'felony range.'" But he cites no authority to support that conclusory proposition. In fact, as a federal court in the District of Arizona explained relatively recently, "punishment of felony range" is a term of art that – while somewhat ambiguous – generally is understood to mean that a witnesses can be cross-examined *on the length of the sentence imposed*. *See Lankford v. Taylor*, No. CV-17-02797-PHX-DWL, 2020 WL 6395294, at *2 (D. Ariz. Nov. 2, 2020) (noting that "other courts have construed [the phrase 'punishment of felony range'] as authorizing mention of the length of the underlying sentence," and cataloguing authorities holding the same).

As a result, then, the best reading of the "punishment of felony range" language in *Albers* is simply that the Tenth Circuit was permitting evidence concerning the length of a prison sentence imposed pursuant to a conviction covered by Rule 609. And that should be an

8

uncontroversial proposition; indeed, as explained in CDOC's Response to Brooks's Motion in Limine No. 1, Brooks himself cites and heavily relies on *two* authorities holding that the term of incarceration is admissible under that rule in making his argument. *See United States v. Pettiford*, 238 F.R.D. 33 (D.D.C. 2006) (allowing evidence that witness had been sentenced to seven to 21 years); *Young v. Callahan*, No. 95 CIV 7584, 1995 WL 169020 (S.D.N.Y. Apr. 10, 1995) (same with a twenty years to life sentence).

More broadly, a number of other courts have held that the admissible "essential facts" of a conviction covered by Rule 609 generally include *the sentence imposed*. *See, e.g., United States v. Estrada*, 430 F.3d 606, 616 (2nd Cir. 2005) (holding that "inquiry into the 'essential facts' of the conviction, including the nature or statutory name of each offense, its date, and the sentence imposed is presumptively required by the Rule [609]"); *Mattiaccio v. DHA Grp., Inc.*, No. CV 12-1249 (CKK), 2019 WL 6498865, at *14 (D.D.C. Dec. 3, 2019) (allowing a party to introduce evidence of "the sentence imposed" of a conviction covered by Rule 609); *Kartman v. Markle*, No. 5:10CV106, 2015 WL 3952639, at *5 (N.D.W. Va. June 29, 2015) (quoting *Estrada* and holding same); *Clem v. Lomeli*, No. 2:05-CV-02129-JKS, 2007 WL 2688842, at *1 (E.D. Cal. Sept. 13, 2007) ("Generally, where convictions are admissible under Rule 609 only the name of the conviction, its date and the sentence imposed is put in evidence."); *Chamberlin v. City of Albuquerque*, No. CIV 02-0603 JB/ACT, 2005 WL 2313503, at *4 (D.N.M. July 29, 2005) ("The Court will therefore permit [impeachment] with the fact [the witness] has been convicted of a felony, the felony's name, the date on which it occurred, and the sentence imposed."); *see also Howell*, 285 F.3d at 1268 (favorably citing treatise indicating evidence concerning "the sentence" is admissible under Rule 609).

That is important because there should be no dispute that an award of restitution is a component of a criminal sentence, just like the length or incarceration or any fines imposed. Indeed, the Tenth Circuit explicitly addressed this question in a recent decision from earlier this year: "[w]e conclude that *restitution is a component of a criminal sentence* and therefore included in the judgment of conviction. Our conclusion is based on the restitution statutes and Supreme Court precedent, both of which treat *restitution as part of the defendant's sentence*." *United States v. Anthony*, 25 F.4th 792, 796 (10th Cir. 2022) (emphasis added); *see also United States v. Majors*, 426 Fed. App'x 665, 667 (10th Cir. 2011) (referring to restitution as a component of a criminal sentence). There is even some suggestion that this is especially true when the crime is a financial one – like securities fraud. *See United States v. Gordon*, 480 F.3d 1205, 1213 (10th Cir. 2007) (Tymkovich, J., dissenting) ("Indeed, restitution is an inseparable component of a criminal sentence, particularly in the context of financial crimes…."). Colorado courts similarly treat restitution as part and parcel of a criminal sentence. *See People v. Milne*, 690 P.2d 829, 837 (Colo. 1984), overruled on other grounds by *Thompson v. People*, 471 P.3d 1045 (Colo. 2020) ("An order requiring the payment of restitution as a condition of probation is as much a part of a criminal sentence as a fine or other penalty."); *People v. Dunlap*, 222 P.3d 364, 368 (Colo. App. 2009).

Therefore, just as CDOC should be permitted to cross-examine Brooks about the length of his sentence resulting from his four securities fraud convictions, so too should it be permitted to examine him about the restitution award imposed against him. It is as much a part of his sentence as is his period of incarceration, and it will be highly relevant to a jury when evaluating his credibility at trial.

**II.      CDOC believes that the specific details concerning Brooks's conduct leading to being charged with securities fraud – at least for the charges for which he was not convicted – is admissible under Rule 608(b).**

CDOC further notes that while it does not contend that anything more than the "essential facts" concerning Brooks's four securities fraud convictions – the charges for which he was convicted, the dates of conviction and his underlying crimes, and his sentence – are admissible under Rule 609, it believes that the specific facts of at least some of his underlying charges *are* admissible under Rule 608(b). That is because they constitute powerful evidence indicating a character for untruthfulness. However, because Brooks's Motion #2 only addresses Rule 609 issues, and because CDOC raised the Rule 608 issue in its own Motion in Limine (to which Brooks no doubt will respond), CDOC will not further argue the issue in this Response.

**III.     CDOC does not anticipate examining Brooks concerning the post-trial motions that he has filed in connection with his criminal convictions, unless he puts them at issue during his direct examination.**

Finally, in his Motion #2, Brooks seeks to have the Court exclude any evidence concerning the various post-conviction motions that he has filed in connection with his criminal convictions for securities fraud. He argues that doing so would cause the jury to believe that he is unrepentant, unapologetic and/or unrehabilitated. While CDOC does not necessarily agree with Brooks's argument on this issue, it hereby represents that it does not intend to raise this issue, unless Brooks puts it at issue during his direct examination. So, for example, if Brooks proclaims his innocence while testifying, then CDOC reserves the right to cross-examine him concerning the various arguments he has raised over the years arguing that innocence in post-conviction motions and habeas petitions and the like. But absent testimony like that, CDOC will not affirmatively address the issue.

## CONCLUSION

WHEREFORE, for the foregoing reasons, CDOC respectfully requests that the Court deny Brooks's Motion in Limine #2 and permit CDOC to cross-examine Brooks about the essential facts concerning his criminal convictions, including the charges for which he was convicted, the relevant dates of those convictions and underlying crimes, and the sentence imposed (including restitution).

Respectfully submitted this 2nd day of December, 2022.

        PHILIP J. WEISER
        Attorney General

        /s/ *Joshua G. Urquhart*
        JOSHUA G. URQUHART*
        Senior Assistant Attorney General
        KELLEY M. DZIEDZIC*
        RACHEL M. LIEB*
        *Counsel of Record
        Assistant Attorney Generals
        Civil Litigation & Employment Law Section
        1300 Broadway, 10th Floor
        Denver, Colorado 80203
        Telephone: 720-508-6000
        Facsimile: 720-508-6032
        E-mail:
        joshua.urquhart@coag.gov
        kelley.dziedzic@coag.gov
        rachel.lieb@coag.gov
        *Attorneys for Colorado Department of Corrections*

# CERTIFICATE OF SERVICE

This is to certify that on December 2, 2022, I have duly served the within RESPONSE TO PLAINTIFF JASON BROOKS'S MOTION IN LIMINE #2 RE: THE UNDERLYING FACTS OF HIS 2010 CONVICTIONS AND HIS POST CONVICTION MOTIONS AND CHALLENGES TO HIS CONVICTIONS, addressed as follows:

Kevin D. Homiak
kevin@homiaklaw.com

Athul K. Acharya
athul@pubaccountability.org

*Attorneys for Plaintiff Jason Brooks*


Adrienne Sanchez, CDOC
Associate Director, Legal Services

s/ *Elle Di Muro*