**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-02894-SKC

JASON BROOKS,

     Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

     Defendant.

---

**PLAINTIFF JASON BROOKS'S RESPONSE TO THE COLORADO DEPARTMENT
OF CORRECTIONS' MOTION IN LIMINE RE: INADMISSIBILITY OF TESTIMONY
BY TROY BROWNLOW CONCERNING JASON BROOKS'S INCARCERATION**

---

Plaintiff Jason Brooks asks the Court to deny the CDOC's motion *in limine*, to the extent

that it prohibits Troy Brownlow from discussing at trial his observations of the symptoms of Mr.

Brooks's ulcerative colitis while they were cellmates for ten months at Bent County Correctional

Facility in late 2011 and early 2012, including:

- Mr. Brownlow seeing the evidence of Mr. Brooks having a fecal accident (*i.e.*, liquid stool in Mr. Brooks's underwear) while waiting in a chow line;

- The frequency with which Mr. Brooks used the toilet in his cell because of diarrhea and liquid stool in late 2011 and early 2012; and

- Mr. Brooks needing to use the toilet in the gym in the view of 300 inmates of inmates during lockdown because of his fecal urgency.

Mr. Brooks does <u>not</u> oppose the motion *in limine*, to the extent that it prohibits Mr.

Brownlow from testifying that the CDOC did not provide Mr. Brooks adequate medical care in

violation of the Eighth Amendment.[1]

---

[1] Mr. Brooks has filed a motion *in limine* to exclude any evidence, argument, testimony, or questioning regarding Mr. Brooks's dismissed claims—including his Eighth Amendment claim—which the CDOC opposed.

## ARGUMENT

The CDOC argues that Mr. Brownlow's firsthand observations of the severity and frequency of Mr. Brooks's symptoms just a few months before he was transferred to Fremont in February 2012 is irrelevant, confusing, and prejudicial. The CDOC is wrong. Mr. Brownlow's testimony is highly relevant to the jury's evaluation of Mr. Brooks's ADA claims, as (i) Mr. Brooks experienced these symptoms just a few months before his first meal pass request at Fremont Correctional Facility in March 2012, (ii) the severity and frequency of the symptoms he experienced underscore the reasonableness of his meal pass request and explain his fear of defecating on himself at Fremont, and (iii) the symptoms demonstrate the unreasonableness of the CDOC's proposed accommodation at Fremont (among other things, Mr. Brooks feared the adult undergarments would not hold his liquid stool).  Nor will the jury be confused or misled by Mr. Brownlow's testimony, as Mr. Brooks's own motion *in limine* prevents any evidence or testimony about his dismissed Eighth Amendment claim, and the CDOC can vigorously cross-examine Mr. Brownlow about the fact that he was not incarcerated with Mr. Brooks at Fremont and has no firsthand knowledge of his symptoms there. For these reasons, the CDOC's motion *in limine* should be denied.

## I.    Mr. Brownlow's Testimony about the Severity and Frequency of Mr. Brooks's Symptoms is Highly Relevant

First, the CDOC incorrectly claims that Mr. Brownlow's testimony about Mr. Brooks's symptoms in late 2011 and early 2012 is irrelevant because Mr. Brooks purportedly did not request a medline/movement pass at Fremont "until March 2013." (Mot. at 3, 6.) This is false.

---

Contrary to the CDOC's claims, Mr. Brooks has no intention of asking Mr. Brownlow "about the allegedly inadequate care provided to Brooks at Bent County." (Mot. at 3.)

The CDOC misstates the facts. Mr. Brooks first requested and received an accommodation for his disability in March 2012 in the form of a medline pass that allowed him "first pull to meds and meals x 3 months." (*Ex. A*, Meal Pass (March 5, 2012).) He requested a renewal of that pass in June 2012—to which CDOC never responded. (*Ex. B*, Request for Sick Call (June 5, 2012).) He thereafter requested accommodations from his healthcare providers in November 2012 and December 2012—and, again, the CDOC did not respond. (*Ex. C*, Ambulatory Health Provider Note (Nov. 9, 2012) at 1 ("[P]t asks for a pass to go to meals with first pull."); *Ex. D*, Ambulatory Health Provider Note (Dec. 7, 2012) at 1 ("[P]t wants to ask the HSA if he can have passes for . . . early pull for going to his meals.").) The request the CDOC references from March 2013 was actually a grievance Mr. Brooks filed because of the CDOC's repeated failure to respond to his requests and provide him a reasonable accommodation throughout 2012. (*See Ex. A* to Mot. at 1 ("Last year, I had been given a medical pass . . . that allowed me to go to medline and meals with the first pulls to chow every day. . . . Since the pass expired in June of last year I have had to miss hundreds of meals because I could not make it to chow.").) Thus, it is simply not true that this case only involves events that occurred "more than a year after Brooks was incarcerated at Bent County," as the CDOC claims. (Mot. at 3.) Instead, the relevant timeframe begins in February and March 2012—immediately after Mr. Brooks was transferred from Bent County to Fremont, and immediately after he was Mr. Brownlow's cellmate. Mr. Brownlow's testimony is thus not "highly attenuated"—as the CDOC claims—but concerns his interactions with Mr. Brooks just a few short weeks before Mr. Brooks's first accommodation request at Fremont. (*Id.* at 8.)

Next, the CDOC misapplies the law. Evidence is relevant if it "has any tendency to make a fact [that is of consequence in determining of the action] more or less probable than it would be

without the evidence." Fed. R. Evid. 401. This relevance standard is "very low," and is easily met here. *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (internal quotation marks omitted).

Despite the CDOC's claims, Mr. Brooks has no intention of offering an "inflammatory § 1983 failure-to-treat theory" at trial, or of using Mr. Brownlow's testimony to "backdoor" this argument. (Mot. at 8.) Indeed, this is precisely why Mr. Brooks filed a motion *in limine* to prevent the CDOC from offering evidence, argument, or testimony about his dismissed claims—which the CDOC opposed. Instead, Mr. Brownlow's testimony will be focused solely on his firsthand observations of the frequency and severity of Mr. Brooks's symptoms while they were cellmates for ten months from late 2011 to early 2012—immediately before Mr. Brooks was transferred to Fremont. Specifically, Mr. Brownlow is expected to testify that:

- Mr. Brooks "had to use the facilities literally every 15 minutes";

- Mr. Brooks "probably went to the bathroom 20, 25 times a day";

- Mr. Brooks had to use the restroom so frequently because he "had constant squirts";

- Mr. Brooks had an accident "waiting in the chow line" for which Mr. Brownlow saw evidence in Mr. Brooks's underwear afterwards; and

- Mr. Brooks's fecal urgency was so bad that he was forced to use the restroom in front of 300 other inmates in the gym toilets (which only covered him from the waist-down) during lockdown.

(*Ex. E*, T. Brownlow Tr. (Oct. 12, 2022) at 20:9-17, 42:14-23, 72:7-74:3, 78:10-79:24.)

These are *exactly the same* symptoms that Mr. Brooks reported as his justification for needing a meal pass accommodation from CDOC at Fremont. For instance:

- **November 9, 2012:** Mr. Brooks tells Dr. Creany that he wanted a meal pass because "sometimes he starts to his meal then needs to return to his [cellhouse] for diarrhea and then misses a meal." (*Ex. D*, Ambulatory Health Provider Note at 1.)

- **May 13, 2013**: Mr. Brooks requests a meal pass because he "is forced to miss numerous meals because of the fecal incontinence [he] get[s] due to [his] ulcerative colitis." (*Ex. F*, Grievance No. 39830 Step III (May 13, 2013).)

- **May 28, 2013:** Mr. Brooks requests a meal pass, so he "can deal with fecal incontinence issues." (*Ex. G*, Req for Accommodation No. 2994 (May 28, 2013).)

- **June 14, 2013**: Mr. Brooks reports having "frequent bowel movements" to NP Sherryl McKim, and she notes that she will check to see if "first pass medline possible." (*Ex. H*, Ambulatory Health Provider Note at 2 (June 14, 2013).)

The fact that Mr. Brownlow witnessed Mr. Brooks experience the *exact same symptoms* at Bent County in late 2011 and early 2012 immediately before he was transferred to Fremont and just a few months before he first received a meal pass accommodation in March 2012 is relevant to the jury's understanding of (i) why Mr. Brooks requested the pass, (ii) why the pass was a reasonable accommodation, (iii) why Mr. Brooks was afraid of having an accident in the chow hall or chow hall line at Fremont, (iv) why Mr. Brooks missed meals at Fremont, and (v) why the CDOC's proposed accommodation of an adult undergarment was unreasonable (because Mr. Brooks was worried that the undergarments could not hold his liquid stool). More generally, the history of Mr. Brooks's disease and symptoms is crucial context for the jury to understand why it was Mr. Brooks's *disability* that caused him to be denied access to meals, and not something else. Mr. Brownlow's testimony about Mr. Brooks's symptoms is thus highly relevant to several of the elements of Mr. Brooks's ADA claims.

Indeed, if the CDOC is correct that *only* Mr. Brooks's symptoms from March 2013 onward are relevant, then there can be no discussion at trial of his symptoms from 2002 (when Mr. Brooks was first diagnosed with ulcerative colitis) through February 2013. The jury would be left with the mistaken impression that he never had any symptoms of ulcerative colitis before that time, and that something happened at Fremont that caused his symptoms to start or deteriorate. This omission

would lead to far greater confusion than simply allowing the jury to hear the full history of Mr. Brooks's symptoms and allowing the CDOC to ask questions and present testimony and argument about how those symptoms may have changed over time. As a result, Mr. Brownlow's testimony about Mr. Brooks's symptoms is highly relevant and not subject to exclusion under Rules 401 or 402.

## II.    The Probative Value of Mr. Brownlow's Testimony about Mr. Brooks's Symptoms Is Not Substantially Outweighed by Any Danger of Unfair Prejudice or Confusion

Second, the CDOC inaccurately states that the relevance of Mr. Brownlow's testimony about Mr. Brooks's symptoms "is outweighed by the potential that the evidence would cause unfair prejudice and/or confuse the jury, and thus should be excluded under Rule 403." (Mot. at 8.) In particular, the CDOC points to the danger that Mr. Brooks will use Mr. Brownlow's testimony to "attempt to 'backdoor' [a] sort of relatively inflammatory § 1983 failure-to-treat theory" by arguing that "CDOC did not provide him with adequate care." (*Id.*) Not so.

Again, Mr. Brooks has no intention of arguing, presenting any evidence, or eliciting any testimony at trial that he received inadequate medical care from the CDOC in violation of the Eighth Amendment.[2] This is why Mr. Brooks filed a motion *in limine* to prohibit such argument, questioning, or evidence from being introduced at trial. (*See generally* Pl.'s MIL No. 3 Re: Mr. Brooks's Former Attorneys, Dismissed Claims and Defendants, and Mr. Brooks's Other Civil Litigation, ECF 385 (filed Nov. 28, 2022) at 2-4.) Thus, there is no danger of the CDOC being "unfairly prejudiced by an account that it failed to provide sufficient care to a sick inmate in custody," or that the jury "might be confused into thinking that the relevant issue in the case is whether CDOC provided appropriate care to Brooks." (Mot. at 9.) These concerns can be readily

---

[2] Tellingly, the CDOC does not cite in its Motion any portion of Mr. Brownlow's testimony in which he purportedly criticizes the medical care Mr. Brooks received at Bent County.

addressed by the Court granting Mr. Brooks's motion *in limine* No. 3. As this is the CDOC's sole reason for claiming Mr. Brownlow's testimony would be confusing and unduly prejudicial, the motion should be denied on this basis alone.

Nor is there any danger that the jury will be confused or misled to believe that Mr. Brownlow personally witnessed Mr. Brooks's symptoms at Fremont. This fact will be made abundantly clear during Mr. Brownlow's direct examination, and the CDOC can vigorously cross-examine him about the fact that he was never incarcerated with Mr. Brooks at Fremont and did not witness his symptoms there. The CDOC is, likewise, free to argue and present any evidence and testimony that it has which suggests that Mr. Brooks's symptoms were less severe or less frequent at Fremont. The jury will then be free to assign whatever weight it deems appropriate to Mr. Brownlow's testimony. This approach allows the jury to evaluate Mr. Brooks's ADA claim about the CDOC's intentional discrimination of him at Fremont, with the necessary context of the history of his symptomatology.

Federal courts are clear: "[T]here is a strong presumption that relevant evidence should be admitted, and thus for exclusion under Rule 403 to be justified, the probative value of evidence must be 'substantially outweighed' by the problems in admitting it." *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343–44 (3d Cir. 2002). "[E]vidence that is highly probative is *exceptionally difficult* to exclude." *Id.* (emphasis added). In balancing, "the proper equation places on one side the *maximum reasonable probative force* for the offered evidence," while "the other side of the equation should include the likely prejudicial impact of the evidence." *Federal Rules of Evidence Manual* 242 (Stephen A. Saltzburg et al. eds., 7th ed. 1998) (emphasis added). When in doubt, "Rule 403 requires admission." *United States v. Krenzelok*, 874 F.2d 480, 482 (7th Cir. 1989).

Here, the CDOC has not met this demanding standard. It cites no case law to suggest that a plaintiff bringing his ADA claim is prevented from presenting evidence and testimony regarding the symptoms of his disability before his first request for accommodation. Nor does any such authority exist. The testimony from Mr. Brownlow regarding his firsthand observations of Mr. Brooks's symptoms as his cellmate for ten months in late 2011 and early 2012 immediately before Mr. Brooks was transferred to Fremont in February 2012 is highly relevant to Mr. Brooks's ADA claims, for the reasons set forth above. The CDOC offers no plausible argument that the jury will be confused or misled by Mr. Brownlow's testimony about Mr. Brooks's symptoms, much less that there is a "substantial[]" danger that this will occur. Fed. R. Evid. 403. As a result, its motion *in limine* should be denied.

## CONCLUSION

For the reasons set forth above, Mr. Brooks respectfully requests the Court deny the CDOC's motion *in limine* to the extent that it prohibits Mr. Brownlow from offering testimony regarding his firsthand observations of Mr. Brooks's symptoms as his cellmate at Bent County Correctional Facility in late 2011 and early 2012. This testimony is highly relevant to Mr. Brooks's claims, and the CDOC's sole argument for its exclusion under Rule 403—*i.e.*, that it would impermissibly be used to "backdoor" Mr. Brooks's dismissed Eighth Amendment claim—can be easily ameliorated by the Court granting Mr. Brooks's motion *in limine* No. 3. There is simply no indication that this testimony will confuse, prejudice, or mislead the jury, much less present a "substantial[]" danger of these things occurring. Fed. R. Evid. 403.

Dated: December 2, 2022.

Respectfully submitted,

*s/ Kevin D. Homiak*
Kevin D. Homiak
HOMIAK LAW LLC
1001 Bannock Street, Suite 238
Denver, Colorado 80204
(505) 385-2614
kevin@homiaklaw.com

and

Athul K. Acharya
PUBLIC ACCOUNTABILITY
P.O. Box 14672
Portland, OR 97293
503-383-9492
athul@pubaccountability.org

*Attorneys for Plaintiff Jason Brooks*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 2, 2022, I electronically served the foregoing **PLAINTIFF JASON BROOKS'S RESPONSE TO THE COLORADO DEPARTMENT OF CORRECTIONS' MOTION IN LIMINE RE: INADMISSIBILITY OF TESTIMONY BY TROY BROWNLOW CONCERNING JASON BROOKS'S INCARCERATION** on the following individuals at the following email addresses:

- **Joshua G. Urquhart**
  joshua.urquhart@coag.gov

- **Rachel Lieb**
  rachel.lieb@coag.gov

- **Kelley Dziedzic**
  kelley.dziedzic@coag.gov

*s/ Jennifer Loadman*