IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02894-SKC

JASON BROOKS,

     Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

     Defendant.

---

## RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: JURY INSTRUCTIONS

Defendant Colorado Department of Corrections ("CDOC"), by and through the Attorney General's Office, respectfully submits this response to Plaintiff Jason Brooks's Trial Brief regarding proposed jury instructions. CDOC states the following in support thereof.

## INTRODUCTION

Brooks's Trial Brief essentially raises two issues for the Court. First, he argues that a deliberate indifference intent standard applies to his claim for damages under Title II of the Americans with Disabilities Act (the "ADA"). Second, he contends that the question of whether the second step of the *United States v. Georgia* ADA abrogation analysis – whether or not the purported ADA violation at issue constituted a separate, stand-alone constitutional violation – essentially is a question of fact that should be submitted to the jury. While CDOC does not completely oppose either proposition in full, it believes that they implicate more complicated issues than those characterized by Brooks in his Trial Brief.

As for the assertion that the intent requirement applicable to a Title II claim for damages is satisfied by a showing of deliberate indifference, CDOC does not disagree with this proposition in a vacuum, at least for the purposes of this lawsuit. However, CDOC believes that the proposed definition included by Brooks is hopelessly oversimplistic and likely to confuse the jury, and it would be highly susceptible to encompassing conduct that would only constitute mere negligence, and not meet the heightened standard of deliberate indifference. Instead, as the Tenth Circuit held in *Havens v. Colo. Dep't of Corrs.*, 897 F.3d 1250 (10th Cir. 2018), and as very recently reinforced by the Fourth Circuit in *Koon v. North Carolina*, 50 F.4th 398 (4th Cir. 2022), a plaintiff seeking to prove that a state corrections agency was deliberately indifferent in the ADA Title II context must meet a much more stringent standard of proof. While – again – CDOC does not disagree that the jury should be instructed on the deliberate indifference standard, the Court should be much more specific and include the sort of qualification and explanation provided by the courts (as explained below) that is applicable to such a more-than-negligence standard.

With respect to the argument that the second prong of the *United States v. Georgia* abrogation analysis, CDOC takes no position as to the question of whether a jury (or the court) should be asked to decide if Brooks was "deprive[d]… of the minimal civilized measure of life's necessities" like "adequate food, clothing, shelter, and medical care." But that does not end the second part of the abrogation analysis in this case. That prong – as indicated above – requires that the purported ADA violation be an independent constitutional violation. As the Court is aware, that inquiry becomes complicated in this case where (as determined by the Tenth Circuit) no individual CDOC staff member or representative engaged in unconstitutional conduct, and if

there is such a violation occurred, it must have been by CDOC collectively under an

"organizational" theory of liability. And *that* is a legal question that is not appropriate for a jury

to resolve. Not only would it require the Court to craft a standard to determine whether a state

agency – and not any particular staff members – directly violated the constitution as an entity

(similar to how municipalities are sometimes directly liable for constitutional violations), but

then it would be required to apply such a standard to the facts in the case, which would be a

complex and potentially difficult task that is not suited for a jury. So while it may be appropriate

for a jury to decide whether Brooks was deprived of the civilized measures of life's necessities

(or not), the question of whether that deprivation is a direct constitutional violation is something

that only the Court can resolve.

Therefore, while CDOC does not entirely disagree with Brooks on the points raised in his

Trial Brief, it believes that the issues that he raises are more complicated than he portrays, and

the jury should be instructed (and the Court should act) accordingly.  Each of those points and

issues are discussed below.

## ARGUMENT

## I.      Deliberate indifference, while an appropriate standard in this case, needs additional explanation.

As acknowledged above, CDOC agrees that, given the facts and circumstances of this

case, a finding of deliberate indifference would be sufficient to show intentional discrimination

under Title II of the ADA. However, for the reasons explained below, it believes that standard

proposed by Brooks's is overly simplistic and likely to confuse the jury, and therefore, the

Court's jury instructions must contain specific detail so that the jury can distinguish between

deliberate indifference and a lesser standard of intent, such as mere negligence.

First, as a threshold matter, CDOC agrees in principle with Brooks that to find deliberate indifference in the context of intentional discrimination, a plaintiff must show that the defendant "(1) had knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." ECF-391 at 3 (*citing Freeman v. Colo. Dep't of Corrs.*, No. 16-CV-02181-NRN, 2019 WL 1296631 at *5 (D. Colo. Mar. 21, 2019)); *see also, Cropp v. Larimer Cty., Colo.*, 793 F. App'x 771, 780 (10th Cir. 2019) ("a plaintiff can establish intentional discrimination by presenting evidence that (1) the defendant's conduct was fueled by discriminatory animus; or (2) the defendant acted with deliberate indifference to the strong likelihood that pursuit of its questioned policies would likely result in a violation of federal rights.").

But saying that deliberate indifference is enough to meet the intent requirement of an ADA Title II damages claim merely begs the question: what, exactly, does that mean, especially in the unique corrections context? Brooks offers only a bare-bones definition that it will be met if CDOC "knew that a harm to Mr. Brooks's federally protected rights under the ADA was substantially likely and failed to act upon that likelihood." CDOC believes that while this may be appropriate in generic deliberate indifference cases, in this case, it is much too simple and would be likely to confuse a jury, potentially causing them to decide that the deliberate indifference standard has been met by conduct that really should only be seen as negligence.

Instead, CDOC contends that the more extensive – and more corrections-specific – deliberate indifference requirements for set forth in *Havens v. Colo. Dep't of Corrs.*, 897 F.3d

1250, 1264 (10th Cir. 2018) should be used to provide sufficient guidance to the jury.[1] That case expressly dealt with the specific issue of what constitutes deliberate indifference in the disability-based discrimination and corrections contexts. It specifically required:

1. The defendant had knowledge that a harm to a federally protected right was substantially likely and;

   o The harm was so obvious the defendant must have known. *Id.* at 1267 ("Deliberate indifference requires actual knowledge; allegations that one would have or should have known will not satisfy the knowledge prong of deliberate indifference.") (*quoting* S.*H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 266 n.26 (3d Cir. 2013)).

   o Evidence of obviousness may include whether the risk of harm was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

2. A failure to act on that likelihood.

   o Failure to act requires more than negligent conduct. *Havens*, 897 F.3d at at 1264; *Verdecia v. Adams*, 327 F.3d 1171, 1175-76 (10th Cir. 2003) ("The mere showing of simple, or even heightened, negligence does not establish that [defendants] were subjectively aware of the risk.") (internal citation omitted).

   o Attempts to remedy the problem, even if negligent, prevent a finding of deliberate indifference. *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006) (A clinician's "negligent failure to provide adequate medical care, even one constituting medical malpractice" does not mean that the clinician was deliberately indifferent); *see also*, *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)

---

[1] *Havens* contemplates deliberate indifference in the context of the Rehabilitation Act, but states "The ADA enlarges the scope of the Rehabilitation Act to cover private employers, but the legislative history of the ADA indicates that Congress intended judicial interpretation of the Rehabilitation Act to be incorporated by reference when interpreting the ADA." *Id*. at 1263 (*citing Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 608 n. 7 (10th Cir. 1998)).

    o   Failure to provide the requested accommodation does not constitute deliberate indifference. *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1229, 1232 (10th Cir. 2009) ("The mere fact that the DMV did not accept Marcia Barber's suggested resolution does not establish a deliberate indifference to her situation or her rights."); *Havens*, 897 F.3d at 1265 (*quoting Barber*); *Selenke v. Medical Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) ("an employer is not required to always provide the employee with the best possible accommodations or in the specific manner the employee requested. It has broad discretion in determining which alternative accommodation should be provided.") (internal citation omitted); *Cropp*, 793 F. App'x at 781 (regulations require public entities to furnish auxiliary aids when such aids are "necessary" and "appropriate," not when they are "desired" or "demanded") (*citing McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146-47 (11th Cir. 2014)).

CDOC believes that a jury instruction on deliberate indifference incorporating that level of specificity and detail would be far more helpful for a jury – and far less likely for the jury to base a liability verdict on mere negligence – than the overly simplistic "substantial likelihood"/"failure to act" instruction  proposed by Brooks.

       Nor is *Havens* the only authority that might help the Court craft jury instructions sufficiently granular to explain to the jury what it must find in order to meet the deliberate indifference standard. Indeed, a recent case from the Fourth Circuit, with facts quite similar to the ones here, provides helpful guidance regarding what a plaintiff must show to establish that a state or state entity was deliberately indifferent. *See, Koon v. North Carolina*, 50 F.4th 398, 406-10 (4th Cir. 2022). Specifically, in *Koon*, the plaintiff alleged a violation under Title II of the ADA for failure to provide a pass to access the inmate handicap library. The Fourth Circuit held that the inmate-plaintiff in the case had failed to come forward with sufficient evidence to establish deliberate indifference for the purposes of summary judgment.

With regard to the first prong of the deliberate indifference test (a substantial likelihood that a federal right would be violated), the court held the potential violation must be *truly* obvious. It explained:

> [The right substantially likely to be violated] must be truly obvious; we should avoid transforming deliberate indifference back into negligence by finding that the reasonably prudent person would have surely known of the issues. We look to whether it was so obvious they must have known, instead of whether it was so obvious they should have known. The Supreme Court has suggested that circumstantial evidence might make out a fact question on deliberate indifference where the rights violations were 'longstanding, pervasive, well-documented, or expressly noted by the prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.' *Again, it's a high bar*.

*Id.*[2] (*quoting Farmer*, 511 U.S. at 842) (emphasis added).

In finding that the plaintiff in *Koon* could not establish deliberate indifference, the Fourth Circuit stressed that "[s]imple failure to comply with the law is not deliberate indifference. It is not enough simply to point to what could or should have been done. *That is the language of*

---

[2] The Fourth Circuit went on to explain:

> "Koon claims that [Defendant] should have looked more carefully at his medical records; she should have looked at the database listing inmates' medical restrictions; she should have talked to him, asked about his restrictions, and examined his knee; she should have talked to any of the other prison staffers who knew his mobility issues and knew what he needed. But all those "shoulds" are the language of negligence, arguments about what a reasonably prudent person would have done. Saying that she should have done a better examination is to make a kind of medical malpractice claim, and we know that cannot be the basis of deliberate indifference. *Estelle*, 429 U.S. at 106. Saying that she should have known what others knew is again a claim about negligence, a claim that she wasn't reasonable. Deliberate indifference requires that Browning knew that Koon likely could not meaningfully access the library as was his right and nonetheless failed to give him a pass."

*Id.* at 409.

*negligence*. Deliberate indifference requires a 'deliberate or conscious choice' to ignore something." *Id*. at 406 (*citing City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (emphasis added). "An official must know of the dangers to federal rights and nonetheless disregard them. The official must know of the facts from which a federal-rights violation could be inferred and then actually draw the damning inference. Deliberate indifference is a high bar." *Id*. at 407 (internal citation omitted).

Finally, the Fourth Circuit even crafted a sort of safe harbor for corrections officials who acted in good faith to try to address or accommodate the disability-related problems in question. It held that "good-faith efforts to remedy the plaintiff's problems *will prevent finding deliberate indifference*, absent extraordinary circumstances." *Id*. (*citing, inter alia, Estelle,* 429 U.S. at 106) (emphasis added). The court explained that this concept – that good faith efforts to resolve the problem leading to an injury – often is applied to analogous contexts, like medical malpractice. *Id.* "The idea is a simple one that flows naturally from the concept of deliberate indifference: Where medical personnel examine and diagnose a patient, where they try to help but fail to live up to expectations, that is more naturally described as negligence than indifference." *Id.*

Therefore, while CDOC agrees that intentional discrimination can be proved by a showing of deliberate indifference, at least for the purpose of this case, the jury must be fully informed about what deliberate indifference entails. A mere finding of negligence or that the CDOC could have provided, or even *should* have provided, Brooks's requested accommodation does not prove that CDOC was deliberately indifferent. Instead, to establish deliberate indifference, Brooks must show that CDOC officials who had the ability to rectify the situation, "drew the damning inference" that Brooks was missing meals because of his ulcerative colitis

and knowing failed to offer any sort of adequate accommodation. *Koon*, 50 F.4th at 407. The

proposed jury instructions submitted by CDOC will reflect that degree of nuance and/or detail.

II.   **While it may be appropriate for the jury to determine whether Brooks was deprived of the civilized measures of life's necessities (or not), only the Court can decide whether any such deprivation constitutes a separate, direct constitutional violation by CDOC as an organization for the purposes of the *United States v. Georgia* ADA abrogation analysis.**

As explained above, the second argument in Brooks's Trial Brief involves the question of

who the appropriate factfinder is to determine whether the second part of the ADA abrogation

analysis – whether the purported ADA violation in question constitutes a separate constitutional

violation – has been met. Brooks argues that because this is a mixed question of law and fact, it

is appropriate for the jury to decide; as a result, he proposes a jury instruction asking it to

determine whether Brooks was "deprive[d]… of the minimal civilized measure of life's

necessities" like "adequate food, clothing, shelter, and medical care." He says that if the jury

answers that in the affirmative, then the second part of the abrogation analysis will be satisfied.

While CDOC does not take any position on whether it would be appropriate for the jury to

resolve the particular question proposed by Brooks, it strongly disagrees that a "yes" answer will

end the analysis for the second abrogation prong. Instead, that will merely raise the question of

whether *CDOC* can be directly liable for the deprivation under an ill-defined type of

"organizational" liability theory. And *that* question – what such a theory would look like, and the

application of it to the facts produced at trial – is very much a question that only the Court can

resolve. This problem is explained further below.

In *United States v. Georgia*, the Supreme Court created a three-pronged test to determine

whether Congress intended to abrogate a state's sovereign immunity from ADA claims for

money damages through congressional legislation: (1) a state's alleged conduct violated Title II of the ADA; (2) to what extent such misconduct also violated a separate constitutional right (via incorporation through the Fourteenth Amendment); and (3) insofar as such misconduct violated Title II but did not violate a separate constitutional right, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid as a congruent and proportional exercise of its authority under § 5 of the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 159 (2006). The issue raised by Brooks involves the second of those prongs, and specifically, who should decide it – the jury, or the Court?

Brooks argues that this second part of the ADA abrogation analysis must be resolved by the jury, because it amounts to the factual question of whether he was "deprive[d]… of the minimal civilized measure of life's necessities" like "adequate food, clothing, shelter, and medical care." As a threshold observation, CDOC does not necessarily disagree that it is possible for a jury to understand and decide that specific, factual query. It takes no position as to whether the jury in this case is charged to make that factual determination.

But CDOC *does* strongly disagree that a "yes" answer will necessarily resolve the second prong of the *United States v. Georgia* analysis. That is because it is entirely possible that Brooks could have experienced such a deprivation, *but not as a result of a constitutional violation by CDOC*. As the Court is aware, in the Tenth Circuit opinion remanding the case, the appellate court held that Brooks could not state a § 1983 Eighth Amendment claim against any individual CDOC defendant because he had not come forward with evidence that any of these individuals acted with the intent necessary to prevail on such a claim. However, the Court permitted the sole remaining ADA claim to proceed. It reasoned that although no individual CDOC staff member

10

may have intentionally discriminated against Brooks, "even where the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1172 n. 13 (10th Cir. 2021) (*quoting Quintana v. Santa Fe Cty. Bd. Of Comm'rs*, 973 F.3d 1022, 1033-34 (10th Cir. 2020)).

In other words, at least for the purposes of the second prong of the *United States v. Georgia* abrogation analysis, the Tenth Circuit appears to be envisioning a theory of "organizational" liability whereby CDOC as an entity could have engaged in conduct constituting a stand-alone, direct constitutional violation, even where none of its staff members committed an individual violation. But the Tenth Circuit did not explain what that sort of direct "organizational" violation theory might entail, and there are no cases in *any* jurisdiction (at least of which CDOC or counsel is aware) explaining how a state agency might be deemed to have directly violated an individual's constitutional rights, even when no individual official or staff member engaged in such a violation, for the purposes of the Eleventh Amendment abrogation analysis.

It is true that a footnote in the Tenth Circuit opinion addressing this issue could be seen as dropping a cryptic hint on this issue. The cases cited in that footnote all involve a *Monell*-type liability theory, which allows plaintiffs to directly pursue municipalities for constitutional violations in certain circumstances where those violations are the result of a policy, custom or lack of training. *See, Brooks,* 12 F.4th at 1172 n. 4 (*citing Quintana*, 973 F.3d at 1033-34; *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)). It is possible that the Tenth Circuit could have been suggesting that such a policy, custom or lack of training theory is appropriate

when determining whether a state agency committed a separate constitutional violation for the purposes of the ADA abrogation analysis. But there simply is no way to know, and if the Court reaches that issue, it will be operating in uncharted legal waters.

So in order to determine whether the second prong of the *United States v. Georgia* abrogation analysis has been met, the Court must do far more than answer the question of whether Brooks has been deprived of "the minimal civilized measure of life's necessities" like "adequate food, clothing, shelter, and medical care." It must determine whether that purported deprivation can be attributed to CDOC directly through some as-of-now undefined and amorphous "organizational" liability theory. This, of course, will require the Court to decipher what the Tenth Circuit *meant* in its oblique reference to such a theory. That is a difficult, purely legal question that would perplex experienced lawyers practicing in the field of civil rights and ADA litigation; it should go without saying that it would be wholly inappropriate for a jury to resolve it.

And even then the task of resolving the second prong of the ADA abrogation analysis would not be finished. At that point, the Court would need to apply the facts shown at trial to whatever organizational theory it thinks the Tenth Circuit was invoking. For example, if the Court were to decide that the Tenth Circuit was envisioning a *Monell*-type to determine direct organizational liability, it would first need to determine whether any CDOC policy, custom or lack of training was responsible for a purported deprivation of Brooks's minimal civilized measure of life's necessities in this case. *Est. of Timmy Henley v. City of Westminster*, No. 20-CV-00028-RM-SKC, 2020 WL 8408474, at *3 (D. Colo. Dec. 22, 2020), *report and recomm. adopted sub nom. Henley v. City of Westminster*, No. 20-CV-00028-RM-SKC, 2021 WL 118560

(D. Colo. Jan. 13, 2021) (citing *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)). If the Court answered that in the affirmative, then it would need to decide whether CDOC had actual or constructive notice that the policies, customs or lack of training in question were substantially likely to cause the purported deprivation at issue. *Id.*

It is possible that not all of the issues that will need to be decided in order to determine whether CDOC directly violated Brooks's constitutional rights under some vague organizational liability theory will be purely legal ones. Some may be more factual in nature; that largely depends on the particular type of organizational liability theory the Court decides is appropriate. But at a bare minimum, *that* – the organizational liability theory that should be used for the purposes of the second prong of the *United States v. Georgia* ADA abrogation analysis – is a purely legal question that only be answered by the Court. Regardless of who decides whether Brooks was deprived of a minimal civilized measure of life's necessities, and even if a factfinder decides in favor of such a deprivation, that question (and likely several others) will remain outstanding.

Therefore, again, CDOC takes no position on whether the jury is asked to resolve the potentially straightforward issue of whether Brooks was deprived of the minimal civilized measure of life's necessities. CDOC agrees that if it becomes necessary to undertake the *United States v. Georgia* abrogation analysis, that factual question likely will need to be resolved, regardless of the factfinder. But contrary to Brooks's apparent position, an affirmative response by the jury would in no way be the end of that abrogation analysis. There would still be considerable work for the Court to do, including resolving the important and complicated legal question explained above.

## CONCLUSION

Wherefore, for the foregoing reasons, CDOC reiterates that it agrees in part, takes no position in part, and disagrees with the various arguments made in Brooks's Trial Brief.

Respectfully submitted this 2nd day of December, 2022.

PHILIP J. WEISER
Attorney General

/s/ *Rachel Lieb*
JOSHUA G. URQUHART
Senior Assistant Attorney General
KELLEY M. DJIEDZIC*
RACHEL M. LIEB*
Assistant Attorney Generals
*Counsel of Record
Civil Litigation & Employment Law Section
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6000
Facsimile: 720-508-6032
E-mail:
joshua.urquhart@coag.gov
kelley.djiedzic@coag.gov
rachel.lieb@coag.gov
*Attorneys for Colorado Department of Corrections*

**CERTIFICATE OF SERVICE**

This is to certify that on December 2, 2022, I have duly served the within RESPONSE TO PLAINTIFF'S TRIAL BRIEF RE: JURY INSTRUCTIONS, addressed as follows:

Kevin D. Homiak
kevin@homiaklaw.com

Athul K. Acharya
athul@pubaccountability.org

*Attorneys for Plaintiff Jason Brooks*

Adrienne Sanchez, CDOC
Associate Director, Legal Services

s/ *Elle Di Muro*