## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02894-SKC

JASON BROOKS,

     Plaintiff,

v.

 COLORADO DEPARTMENT OF CORRECTIONS,

     Defendant.

---

### RENEWED RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW

---

Defendant Colorado Department of Corrections ("CDOC"), through its attorneys, respectfully files this Renewed Rule 50 Motion for Judgment as a Matter of Law, or in the Alternative, Motion for Partial Judgment as a Matter of Law (the "Motion").

### **INTRODUCTION**

Judgment (or partial judgment) as a matter of law is warranted pursuant to Rule 50 of the Federal Rules of Civil Procedure for two reasons.

First, partial judgment as a matter of law is warranted as to Plaintiff Jason Brooks's claim for compensatory damages under Title II of the Americans with Disability Act (the "ADA") because he failed to produce sufficient evidence of compensable physical injury as required under 28 U.S.C. § 1997e(e) of the Prison Litigation Reform Act (the "PLRA"). He thus cannot collect damages for *any* non-physical emotional or mental harm. All of the purported injuries that he presented evidence to support before the jury – missed meals, lost weight, incontinent accidents, and transient instances of physical discomfort, resulting from the denial of his request for

1

a "first pull" or "medline" meal pass – are either purely mental or emotional harms or non-compensable *de minimis* injuries.

Specifically, caselaw from numerous jurisdictions hold that missing meals, weight loss, and soiling oneself are not physical injuries under the PLRA. Even if they could *cause* a physical injury in certain circumstances, they are not injuries in and of themselves within the meaning of the PLRA. As for his allegations of fleeting pain caused by being forced to hold his bowels while waiting or eating in the chow hall, authorities from the various jurisdictions – including numerous courts in the District of Colorado – are equally clear that pain alone without any physical manifestation is not a compensable physical injury under the PLRA.

Notwithstanding the foregoing, at oral argument on the Rule 50(a) motion asserted before the verdict, Brooks raised three possible additional injuries that he says could satisfy the PLRA's physical injury requirement: (1) malnourishment, (2) anal leakage, and (3) general progression/worsening of ulcerative colitis. But none of these are sufficient to do so. As for malnourishment specifically, while it may or may not be a physical injury in certain circumstances, the only evidence here suggesting that Brooks might have been malnourished dates back to *March 2012*, during which time Brooks had the first pull or medline pass at issue (*i.e.*, before he ultimately was denied that same pass months later). Moreover, Brooks presented no evidence to suggest that it was missed meals – and not his ulcerative colitis itself – that caused any malnourishment, and in the absence of such evidence, it was beyond the knowledge and expertise of the lay jury to pick between those two potential causes.

In a similar vein, Brooks's claimed anal leakage and general progression or worsening of ulcerative colitis cannot constitute the required physical injury under the PLRA because he failed to present any evidence showing that the denied accommodation caused or otherwise was connected to these alleged injuries.  It certainly would not be obvious to a lay person or a lay jury that missed meals might cause or otherwise be related to such leakage or the progression of ulcerative colitis, and in the absence of any evidence on that issue (such as medical expert opinion), Brooks did not show that the one might have anything to do with the others.

Finally, at argument, the Court asked whether even if a particular individual injury was too *de minimis* to meet the physical injury requirement of § 1997e(e), a number of those sorts of injuries might do so in the aggregate.  But they would not, at least in the facts presented by this case.  First, authorities from a number of jurisdictions suggest the sorts of episodes of transient pain similar to the abdominal and rectal pain alleged by Brooks are insufficient to constitute compensable physical injuries under the PLRA – even in cases where they intermittently occur over time.  More broadly, allowing an inmate to satisfy the § 1997e(e) physical injury requirement by simply asserting that he felt temporary discomfort (like abdominal or rectal pain) on a number of unspecified occasions without any other supporting evidence defeats the entire purpose of that provision in the PLRA, which is to have an actual physical injury "vouch" for an inmate's unverifiable self-reports of pain or emotional or mental harm.  Put simply, if an inmate could clear the § 1997e(e) threshold by merely saying "and I experienced pain on certain occasions," then the physical injury requirement would be entirely toothless.

Judgment as a matter of law is also warranted (in its entirety) for a second reason: Brooks failed to produce sufficient evidence that any CDOC employees – alone or collectively – acted with deliberate indifference when confronted with Brooks's request for a first pull or medline pass to attend certain chow pulls as an accommodation under the ADA.  Instead, the uncontradicted evidence is that non-medical staff considered this request to be one best suited for evaluation by clinical services.  They then routed the request to that department, which made a good faith determination that it was not medically indicated.  That decision may or may not have been in error, but it was not done in a deliberately indifferent manner.

## LEGAL STANDARD

Rule 50 provides in relevant part:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue…."

*Id.* at (a)(1).  A motion for judgment as a matter of law may be made at any time prior to a case being submitted to the jury.  *Id.* at (a)(2).  Judgment as a matter of law will be appropriate only if the "evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion."  *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000) (citing *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999); *accord Manning v. McGraw-Hill, Inc.*, 216 F.3d 1087, 2000 WL 763767, at *3 (10th Cir. 2000) (table).

In reviewing the record, the court cannot "'weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury.'"  *Manning*, 2000 WL

763767, at *3 (citing *Deters* and *Baty*). Judgment as a matter of law is appropriate only where there is no sufficient evidentiary basis for a claim under the prevailing law. *Id.*

Under Rule 50(b), where – as here – a court does not grant a Rule 50(a) pre-verdict motion for judgment as a matter of law, it will be:

> [C]onsidered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment – or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged – the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. Pro. 50(b). A party must submit a renewed Rule 50(b) motion for judgment as a matter of law in order to preserve issues raised in a Rule 50(a) motion for appeal. *See, e.g., Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1224 n. 5 (10th Cir. 2016); *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1250 n. 1 (10th Cir. 2013). A court considering a Rule 50(b) motion should apply the same legal standard applicable to a pre-verdict Rule 50(a) motion. *See, e.g., Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1243-44 (10th Cir. 2009) (applying same standard); *Fresquez v. BNSF Ry. Co.*, No. 17-CV-0844-WJM-SKC, 2021 WL 857626, at *2 (D. Colo. Mar. 8, 2021) (same).

## ARGUMENT

First, partial judgment as a matter of law is warranted as to Brooks's claim for compensatory damages because he failed to present evidence of physical injury as required by the PLRA. Second, to preserve the issue for appeal, CDOC contends that judgment as a matter of law is warranted in its entirety because the uncontradicted evidence shows that neither CDOC nor any of its staff acted with the deliberate indifference required for an ADA Title II claim for damages.

I.  **Brooks failed to present evidence that he experienced a physical injury as required by § 1997e(e) of the PLRA.**

    A.    **Scope and purpose of § 1997e(e) generally.**

In 1996, the United States Congress passed the PLRA, which was intended to decrease the amount of frivolous litigation involving prison and jail inmates in the federal court system.  *See* 28 U.S.C. § 1997e; *Robbins v. Chronister*, 402 F.3d 1047, 1051 (10th Cir. 2005).  As part of that, the PLRA limits the ability of inmate litigants to recover damages for non-physical injuries.  Specifically, § 1997e(e) provides in relevant part: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody *without a prior showing of physical injury*…."  28 U.S.C. § 1997e (e) (emphasis added).

As multiple courts have observed, the physical injury requirement in § 1997e(e) is best seen as Congress's attempt to address the concern that inmates could proceed with litigation of groundless or frivolous claims by lodging allegations of hard-to-quantify and unverifiable injuries such as emotional distress or mental trauma.  *See Dawes v. Walker*, 239 F.3d 489, 496 (2d Cir. 2001), *overruled on other grounds* (Walker, C.J., concurring) (examining legislative history of § 1997e(e) and concluding that "Congress recognized that, unlike physical injuries, emotional injuries are inherently difficult to verify and therefore tend to be concocted for frivolous suits"); *Wilson v. Phoenix House*, No. 10 CIV. 7364 DLC, 2011 WL 3273179, at *3 (S.D.N.Y. Aug. 1, 2011) (quoting *Dawes* for same proposition).  In other words, "[r]equiring physical injury in cases seeking damages for mental or emotional injury reflects Congress's belief that the existence of a physical injury would distinguish meritorious prisoner claims of emotional injury from frivolous

ones; the physical injury would, in essence, vouch for the asserted emotional injury." *Carter v. Allen*, 940 F.3d 1233, 1240 (11th Cir. 2019) (Martin, J., dissenting).

**B.    Application of § 1997e(e) to Brooks's ADA claim.**

The scope of § 1997e(e) is notably broad, and it encompasses any "[f]ederal civil action"; there is no limit restricting it to any particular type of federal claim (*e.g.*, federal *Bivens* or § 1983 claims). On its face, then, the provision applies to ADA claims. Although the Tenth Circuit has not yet addressed this precise issue, numerous other circuits have unanimously concluded that § 1997e(e) encompasses ADA claims. *See Pierce v. Cty. of Orange*, 526 F.3d 1190, 1224 (9th Cir. 2008) (describing the argument that § 1997e(e) does not apply to ADA claims as "unpersuasive in light of the plain language of [the provision]"); *Cassidy v. Ind. Dep't of Corrs.*, 199 F.3d 374, 376 (7th Cir. 2000) (holding same); *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (holding same). Courts within the District of Colorado have reached that same result. *See, e.g., Hughes v. Colorado Dep't of Corrs.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009) (applying § 1997e(e) to ADA claim for money damages).

Accordingly, § 1997e(e) applies to ADA claims and bars the recovery of money damages for mental or emotional harm in the absence of physical injury. For Brooks to prevail, then, he needed to present evidence of a physical injury at trial that might meet that requirement and entitle him to compensatory damages. In that regard, CDOC believes that he arguably has produced evidence of the following alleged potential harms caused[1] by the alleged ADA violation at issue: (a) missing meals; (b) lost weight; (c)

---

[1] As discussed below, counsel for Brooks also raised three other possible injuries at argument: malnourishment, anal leakage, and the general progression or worsening of Brooks's ulcerative colitis. For the reasons explained herein, CDOC believes that these

being "forced" to soil himself; and (d) abdominal and rectal pain as a result of trying to

hold his bowels.[2]  But none of these constitute a physical injury as required by the PLRA.

>    *1.    Missed meals, weight loss and incontinence.*

To start, Brooks testified that he missed numerous meals served in the prison

dining hall as a result of CDOC's purported failure to provide him with a reasonable

ADA accommodation.  As a threshold matter, missing meals on various occasions is not,

in and of itself, a "physical injury" for the purposes of § 1997e(e).  *See Mitchell v. Horn*,

318 F.3d 523, 534 (3rd Cir. 2003) ("Loss of food, water, and sleep are not themselves

physical injuries.").  Although the PLRA famously does not define "physical injury,"

courts have construed that to mean the covered inmate must have suffered "tangible

physical effects."  *See Clifton v. Eubank*, 418 F. Supp. 2d 1243, 1246 (D. Colo. 2006).

Missing meals is a very different animal than a tangible physical injury.

That said, missing meals might potentially cause some other sort of physical

injury.  *See, e.g., Mitchell*, 318 F.3d at 534.  For example, if an individual experienced a

tangible health condition as a result of that loss of access to food, then that resulting

condition might be a physical injury.  But merely missing meals, without more, is not.

The second potential physical injury that Brooks might cite as a physical injury is

purported weight loss that he ostensibly experienced as a result of the missed meals.  This

argument fails for two reasons.  First, there was no evidence submitted that he did, in

fact, lose weight – at least to any significant degree – as a result of being denied access to

---

potential injuries should be disregarded because there simply was no evidence to show
that they were caused by or connected to the alleged ADA violations at issue here.

[2] Brooks also claimed that he suffered humiliation, shame, and fear of being physically
harmed (though he never actually was).  Obviously, these are mental or emotional harms.

food.  The evidence presented in the case shows the contrary.  It shows that Brooks weighed 152 pounds when he first was placed in the custody of CDOC, he was transferred to Fremont Correctional Facility ("Fremont") during an apparent flare-up where his weight declined to 143 pounds, but then it rebounded and stabilized at a plateau of around 150-165 pounds (within the normal range of the body-mass index) by early 2013.  By the time Brooks began formally requesting the ADA accommodation in question, his weight remained relatively unchanged, within a range of 152 pounds to 164 pounds.[3]  The evidence at trial also showed that at that time Brooks's weight was between 150-155 pounds – despite having been out of CDOC's custody since August of 2021 – demonstrating that his weight at Fremont was not out of the ordinary for him.

Any variance within that range – even if it was attributable to missed meals (and there is no evidence of that) – would be *de minimis*.  And caselaw is crystal clear that such *de minimis* injuries are not a sufficient physical injury to meet the PLRA's requirement.  *See Mitchell*, 318 F.3d at 536 (surveying the authorities and finding the courts of appeals have read 1997e(e) to require a 'less-than-significant-but-more-than-*de minimis* physical injury as a predicate' to allowing the successful pleading of an emotional injury.); *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) ("42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than *de minimis*"); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated by Harris v. Garner,* 197 F.3d 1059 (11th Cir.1999), *reinstated in part on reh'g*

---

[3] Brooks appears to have achieved his highest weight at Fremont of 170 pounds in October or November of 2012, and his lowest post-2012 weight of 152 pounds in April 2017, meaning after arriving at Fremont experiencing a flare-up and significant weight loss, and being placed on medication and having his weight rebound and stabilize, his weight remained within a relatively narrow 18-pound range for *more than half a decade*.

by *Harris v. Garner*, 216 F.3d 970 (11th Cir.2000) ("the physical injury must be more

than *de minimis*, but need not be significant"); *Siglar v. Hightower*, 112 F.3d 191, 193

(5th Cir. 1997); *Clifton*, 418 F. Supp. 2d at 1245-46 (discussing and citing caselaw);

*Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999) (citing *Siglar*).

Moreover, even if it were not *de minimis* in this case, numerous courts – including

courts within the District of Colorado – have held that weight loss alone does not satisfy

the physical injury requirement of the PLRA.  *See, e.g., Rainey v. Huertas*, No. 12-CV-

01434-CMA-MEH, 2013 WL 491925, at *13 (D. Colo. Jan. 17, 2013), *report and

recomm. adopted*, No. 12-CV-01434-CMA-MEH, 2013 WL 491921 (D. Colo. Feb. 7,

2013) ("[H]owever, weight loss, in itself, has been deemed to be insufficient to

demonstrate physical injury under the [PLRA]."); *Gibson v. Zavaras*, No. 09-CV-02328-

WYD-KLM, 2010 WL 3790994, at *7 (D. Colo. Aug. 10, 2010), *report and recomm.

adopted*, No. 09-CV-02328-WYD-KLM, 2010 WL 3790894 (D. Colo. Sept. 22, 2010)

("[N]umerous courts have held that weight loss is insufficient to support any award for

emotional distress under 42 U.S.C. § 1997e(e)."); *Murray v. Edwards Cty. Sheriff's

Dep't*, 453 F. Supp. 2d 1280, 1292 (D. Kan. 2006) ("[W]eight loss in itself has been

deemed to be insufficient to demonstrate physical injury under the PLRA."); *Plasencia v.

California*, 29 F. Supp. 2d 1145, 1152 (C.D. Cal. 1998) ("[W]eight loss is insufficient to

constitute a prior physical injury under PLRA.").  As was the case with the missed meals,

while significant weight loss might itself cause some deleterious health condition that

could constitute a physical injury, the lost weight alone would not.

The next evidence of possible physical injury that Brooks may point to is his

testimony (and, by implication, that of his cellmates) that due to the denial of his

requested accommodation, he was "forced" to soil himself while at the chow hall.  But as this argument also is inconsistent with the well-established law.

For example, in *Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015), an inmate allegedly was given medication that resulted in soft stools while he restrained in a hospital, and he was forced to defecate himself and then sit in his own excrement for *two days* (while being taunted by his guards).  *Id.* at 1298.  The Eleventh Circuit found that the plaintiff did not allege any physical injury arising from that hospital stay, and therefore he was not entitled to compensatory damages under § 1997e(e), though it held that he could be entitled to nominal and punitive damages.  *Id*. at 1307.

Other jurisdictions have reached a similar result.  *See, e.g., Thomas v. McCoy*, No. 17 C 6386, 2020 WL 247464, at *7 (N.D. Ill. Jan. 16, 2020) (noting that damages would be "limited" by § 1997e(e) for plaintiff bringing claim that he was forced to sit in his own waste for several hours); *Morin v. Morse*, No. CIV. 08-192-P-S, 2008 WL 3523195, at *2 (D. Me. Aug. 12, 2008) (holding that an inmate being forced to defecate on himself is not a physical injury for the purposes of § 1997e(e)); *see also Pierce v. Porter*, No. CV 21-1262, 2022 WL 2298455, at *20 (E.D. La. June 6, 2022), *report and recomm. adopted*, No. CV 21-1262, 2022 WL 2291838 (E.D. La. June 24, 2022) (holding that § 1997e(e) barred damages for inmate forced to sit in own urine for several hours).  More broadly, courts have held that exposure to raw sewage, on its own, is not a physical injury for the purposes of the PLRA – even where that exposure caused nausea and vomiting.  *See, e.g., Alexander v. Tippah Cty, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003).

If being forced to sit in excrement or other waste for hours or even *days* (as the *Brooks* plaintiff claimed) is not sufficient physical injury for the purposes of the PLRA

on their own, then clearly the short exposures described by Brooks in his testimony (and echoed by his cellmates) – that he would have an accident and immediately return to his cell – cannot be one.  Therefore, any argument that soiling himself was enough for Brooks to satisfy the physical injury requirement in the PLRA fails as a matter of law.

### 2.      *Physical pain alone.*

Finally, Brooks testified that he felt physical discomfort from trying to "hold" his bowels while waiting for food, thus resulting in abdominal or rectal pain.  Brooks did not specify how often that pain might occur, or any particular occasion on which it did.  Nor did he say how long any such episode might last, though given his testimony that he typically had between thirty seconds and a few minutes to get to a bathroom before the urge became overwhelming, it could not have been longer than that brief interval.

This argument also fails as a matter of law; the well-established caselaw from the various circuits is clear that temporary pain is a *de minimis* injury that is not a sufficient physical injury to satisfy § 1997e(e).  *See, e.g., Oliver*, 289 F.3d at 627-29 (holding that significant leg and back pain caused by standing in a crowded cell for several days was *de minimis* and thus not physical injury under PLRA); *Harris*, 190 F.3d at 1288 (holding that irritation, inflammation and cuts caused by a dry shave not a physical injury sufficient to meet PLRA requirement); *Siglar*, 112 F.3d at 193 (holding same with respect to ear pain); *Jarriett v. Wilson*, 162 Fed. App'x 394, 401 (6th Cir. 2005) (same with respect to significant leg and toe pain, swelling and numbness).

That principle also has been explicitly embraced and adopted by numerous courts within the District of Colorado.  *See, e.g., Clifton*, 418 F. Supp. 2d at 1246 (citing *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) and *Sealock v. Colorado*, 218 F.3d 1205, 1210

(10th Cir. 2000)) ("Physical pain, standing alone, is a *de minimis* injury that may be characterized as a mental or emotional injury and, accordingly, fails to overcome the PLRA's bar…."); Mackey v. Watson, No. 17-CV-01341-CMA-STV, 2019 WL 3955882, at *6 (D. Colo. Aug. 22, 2019) (quoting *Clifton* for same proposition); *Sarno v. Reilly*, No. 12-CV-00280-REB-KLM, 2013 WL 1151818, at *11 (D. Colo. Jan. 17, 2013), *report and recomm. adopted*, No. 12-CV-00280-REB-KLM, 2013 WL 1151817 (D. Colo. Mar. 20, 2013) (same); *Jones v. Cowens*, No. 09-CV-01274-MSK-MJW, 2010 WL 3239286, at *2 (D. Colo. Aug. 12, 2010) (citing *Clifton* for same).[4]

As such, Brooks's alleged pain, like the rest of the potential physical injuries for which he presented evidence at trial, must be rejected.

### C.  Brooks presented no evidence that a failure to accommodate caused malnourishment, anal leakage, and/or progression of his ulcerative colitis.

During oral argument on CDOC's Rule 50(a) motion, counsel for Brooks identified three additional possible physical injuries that might satisfy the § 1997e(e) requirement: Brooks's possible malnourishment, anal leakage that he says he suffered with increasing frequency at Fremont, and the general progression (worsening) of his ulcerative colitis.  None be the requisite physical injury for the purposes of the PLRA.

#### 1.  Malnourishment.

At trial, Brooks presented evidence – deposition testimony by a (now-deceased) gastroenterologist, Dr. Atul Vahil – that at some point during his incarceration at Fremont, his blood tests showed low albumin or prealbumin levels, which potentially

---

[4] Although the Tenth Circuit has never specifically held that pain alone is insufficient, it has "suggested" that it would also adopt that view.  *See Sealock*, 218 F.3d at 1210 n. 6; *see also Clifton*, 418 F. Supp. 2d at 1246 (characterizing *Sealock* in that manner).

could indicate malnourishment.  A review of the records relied upon by Vahil (submitted as an exhibit to the jury) shows that Brooks's sole test with low albumin and/or prealbumin levels occurred on March 30, 2012.[5]  For the reasons explained below, even if these results are seen as sufficient to show that Brooks was experiencing malnourishment, that still would not be enough to be the requisite physical injury.

First and foremost, Brooks's potential malnourishment could not have been the required physical injury for the straightforward reason that it happened too early.  Again, the only evidence presented at trial indicating that he could be malnourished was that March 2012 blood test indicating that his albumin and prealbumin levels were low *at that time*, and Vahill's testimony that low blood albumin levels potentially might indicate malnourishment.  All subsequent blood tests in Vahil's medical file in evidence show normal albumin and prealbumin levels.  But the evidence is unambiguous that beginning on March 6, 2012, Brooks was on prednisone and had a pass to go to the first pull or medline pull.  Indeed, Brooks testified that he was first prevented from going to that pull in or around November of 2012 – *months* after the blood test that included a relatively low albumin and/or prealbumin levels.  Therefore, even if that result is indicative of malnourishment, Brooks's purported malnourishment cannot support his damages claim because it occurred *prior* to CDOC denying his request for accommodation, as a time when he already had a pass allowing him to access to his preferred chow pull.

Furthermore, even if there had been any evidence that Brooks suffered from malnourishment during the time period in which he was denied the meal pass at issue

---

[5] Vahil's medical records were admitted as Plaintiff's Exhibit No. 39.  The relevant March 2012 blood tests are at pp. 64-65 of the exhibit.

(which, again, there was not), it is not clear that malnourishment on its own is a physical

injury under § 1997e(e), or that a reasonable layperson could connect malnourishment to

Brooks's purported missed meals without an expert's help, especially given that Brooks

was suffering from ulcerative colitis.  As to the first of those, at least some authorities

suggest that claims of "malnourishment" or "starvation" without more – *e.g.*, allegations

of some physical manifestation of injury – do not constitute physical injuries under the

PLRA.  *See Minion v. Lindsey*, No. 4:19-CV-P95-JHM, 2019 WL 4675391, at *4 (W.D.

Ky. Sept. 25, 2019) ("Moreover, Plaintiff does not state that he suffered any harm as a

result of the alleged overcrowding, starvation, or being forced to sleep on the floor.");

*compare with Jean-Ewoll v. Tate*, No. 3:17-CV-938-J-34JBT, 2019 WL 186646, at *6

(M.D. Fla. Jan. 14, 2019) (holding that where starvation caused long term stomach

distress, it met the § 1997e(e) threshold).

     More fundamentally, Brooks did not present any evidence actually linking his

purported malnourishment to meals missed as a result of CDOC's alleged failure to give

him a first pull or medline pass, as opposed to his ulcerative colitis generally, particularly

since the only evidence introduced of possible medical indications of malnourishment

was from a time period in which Brooks had the meal pass.  The Tenth Circuit – like

virtually every other jurisdiction – is clear that while medical expert testimony is not

*always* necessary to prove that a defendant's conduct caused some detrimental health

effect, condition, or diagnosis, where there is no obvious link between the two and

causation would lie beyond the knowledge and experience of a normal layperson, such

expert testimony is required.  *See, e.g., Zartner v. Miller*, 760 Fed. App'x 558, 563-64

(10th Cir. 2019) (requiring expert testimony to link tight handcuffing and an inmate's

wrist fracture); *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010) (stating that expert testimony is unnecessary when someone breaks a leg from a vehicle crash because causation is obvious); *Duncan v. Milyard*, No. 14-CV-00301-REB-NYW, 2017 WL 2986495, at *8 (D. Colo. July 13, 2017) (requiring expert testimony to show that exposure to uranium and certain chemicals caused certain adverse health effects).

As the Tenth Circuit explicitly explained in *Zartner*:

> The testimony of a medical expert is not always necessary to establish causation. For example, expert testimony might be unnecessary to find causation when a brawl leads to a broken nose or black eye. *But when an injury lacks an obvious origin and multiple causes are possible, expert medical testimony is necessary to prove causation*….

760 Fed. App'x at 563-64 (emphasis added; internal citations omitted); *accord Perry v. Auto-Owners Ins. Co.*, No. 19-CV-3116-WJM-SKC, 2021 WL 4060633, at *8 (D. Colo. Sept. 7, 2021) ("Expert testimony on medical causation is required to establish a causal link between complex injuries and the alleged origins of those injuries."). These principles of causation apply fully to a claim under the ADA. *See, e.g., Felkins v. City of Lakewood*, 774 F.3d 647, 652 (10th Cir. 2014) ("These evidentiary principles [of causation concerning obvious versus non-obvious physical injury] apply, of course, to ADA claims."); *Neri v. Bd. of Educ. for Albuquerque Pub. Sch.*, 860 Fed. App'x 556, 562 (10th Cir. 2021) (quoting *Felkins* for the same proposition).

Here, Brooks's purported malnourishment does not fall within the realm of being so obvious that a lay jury might conclude that an unspecified number of missed meals caused it – especially where, as noted above, Brooks's weight remained relatively stable once he arrived at Fremont while experiencing a flare-up, received appropriate treatment, and his weight rebounded. To be clear, CDOC does not contend that food deprivation could never cause one to be malnourished, or even that in a vacuum, a lay jury might

reasonable concluded that there is a connection between the food deprivation and malnourishment.  But in this case, there was scant evidence of any malnourishment (rather, Dr. Vahil's deposition testimony only stated that some of Brooks' lab results were *potential* indications of the same), and there is record evidence of another cause for the possible malnourishment: *Brooks's ulcerative colitis itself*.

Specifically, there was ample evidence presented at trial that Brooks's condition can cause problems with malabsorption of nutrients in the person's colon.  Thus, the most logical inference is that to the extent Brooks experienced malnourishment, it was caused by his underlying medical condition, and not the denial of an ADA accommodation.  Absent expert testimony, a jury could not reasonably conclude that to the extent Brooks experienced malnourishment, that it was caused by lack of food due to a denied first pull or medline pull and not by malabsorption from ulcerative colitis generally.  That is especially true given that the only blood test for which Brooks showed low albumin and prealbumin levels occurred in March 2012, at which point he was (undisputedly) suffering from a flare-up, was recently put on medication, and had been issued the subsequently requested first pull or medline pass.

In the absence of any competing or dissenting expert testimony informing the jury that the denial of a first pull or medline pull caused Brooks to suffer from malnourishment, Brooks failed to demonstrate causation for this potential injury.  *See Zartner*, 760 Fed. App'x at 563-64; *Perry*, 2021 WL 4060633, at *8.  Therefore, the possible malnourishment cannot be the physical injury necessary required by § 1997e(e).

2.   *Anal leakage and general progression or worsening of Brooks's ulcerative colitis.*

Brooks's anal leakage and general progression or worsening of his ulcerative colitis claims fail for similar reasons.  A normal layperson or lay jury simply does not possess the knowledge and expertise required to conclude that Brooks not being given a first pull or medline pass, and then missing meals as a result, was the medical cause of subsequent anal leakage or a worsening of his condition; only expert medical opinion could establish that relationship.  Therefore, in the absence of any expert testimony connecting that anal leakage or a general worsening of Brooks's ulcerative colitis to the purported failure to accommodate his disability, those symptoms cannot constitute the requisite physical injury required by the PLRA.

Furthermore, at argument, counsel for Brooks took exception to the proposition that in order for those not-obviously-connected symptoms to be the necessary physical injury as required by the PLRA, he needed to present medical expert testimony that they could, in fact, result from the failure to provide him with a first pull or medline pass and the purported meals that he missed as a result.  As an initial matter, it is not CDOC's position that such expert opinion is required by § 1997e(e) specifically; instead, it is more broadly that if Brooks wants to connect the relevant injuries to the alleged ADA violation in question (and recover damages for them), he needed to put on evidence showing that these injuries were caused by the violation – and due to their non-obvious nature, only medical expert testimony could do that.  *See Neri*, 860 Fed. App'x at 562.  But even in the narrow § 1997e(e) context, it is noteworthy that a number of other courts have *expressly* applied this principle to § 1997e(e)'s physical injury requirement and refused to hold it satisfied by a non-obvious injury where there was no medical expert evidence

establishing causation. *See, e.g., Berger v. Gil*, No. 14-61294-CIV, 2018 WL 11211152, at *2 (S.D. Fla. Nov. 13, 2018) (holding that the physical injuries cited by the plaintiff to meet the § 1997e(e) physical injury requirement were internal and thus not obvious, and therefore plaintiff needed medical expert testimony to establish causation); *Crawford v. Epps*, No. 4:12CV38-MPM-SAA, 2015 WL 5178125, at *7 (N.D. Miss. Sept. 4, 2015) (holding same); *Crain v. Menchaca*, No. 3:12-CV-4063-L, 2015 WL 464391, at *3 (N.D. Tex. Feb. 4, 2015) (affirming magistrate judge recommendation recommending same).

Put simply, Brooks's claim that the failure to reasonably accommodate his disability caused anal leakage and general progression of his condition is not the kind of obvious injury for which a jury could determine causation without an expert's help. Because there was no evidence presented linking those conditions to CDOC's purported ADA violation, they cannot be the requisite § 1997e(e)physical injury.[6]

---

[6] Notably, the concept of causation and the PLRA's physical injury requirement becomes somewhat more complicated in the context of an Eighth Amendment claim for deliberate indifference to a serious medical need.  In almost all of those cases, the defendant or defendants will not have directly caused the medical need in question, and yet it is uncontroversial that the injury or condition necessitating treatment is often deemed a sufficient physical injury to satisfy § 1997e(e).  *See, e.g., Sealock*, 218 F.3d at 1210 n. 6 (defendants did not cause plaintiff's heart attack, but it was enough to meet the PLRA physical injury requirement).  A good way to think about such a claim is that although a defendant has not "caused" the serious medical need at issue, once he or she becomes aware of it and fails to provide care (or have care be provided in a gatekeeper scenario), he or she effectively and/or indirectly could be seen to have "caused" the condition to persist. Unlike those cases, however, where there is no dispute that the physical injury (a serious medical need) is intrinsically related to the alleged misconduct (failure to provide care), in this case there is no competent evidence that the anal leakage or general progression or worsening of Brooks's ulcerative colitis are related or connected in any way whatsoever to the alleged failure of CDOC to reasonably accommodate his disability and the meals that he purported missed as a result of it.

**D.      Aggregation of Brooks's various non-compensable injuries, such as his self-reported pain.**

Lastly, during argument, the Court asked whether numerous *de minimis* injuries (such as Brooks's alleged pain in holding his bowels while waiting for food), which – individually – do not satisfy the PLRA's physical injury requirement in isolation, might nonetheless satisfy it in the aggregate.  While it is not entirely clear whether such aggregation is *ever* permissible to satisfy § 1997e(e), in this case at least, it clearly is not.

That is largely based on the nature of the *de minimis* harm allegedly suffered by Brooks.  At trial, he presented evidence (consisting only of his own testimony) that because of his ulcerative colitis and the failure of CDOC to provide him with a first pull or medline pass, he would be forced to go to chow and hold his bowels while waiting for food.  Brooks testified that he could do so for a period of time varying between 30 seconds and a few minutes, and that on occasion, "holding it" caused him abdominal and rectal pain.  In other words, the combined injuries that Brooks hypothetically would need to aggregate are an unspecified number of extremely brief and temporary episodes of abdominal and rectal discomfort – none requiring medical attention – that occurred while he tried to hold his bowels while waiting for chow.  It would be wholly inappropriate to allow these instances of transient discomfort to meet the § 1997e(e) physical injury requirement for the reasons explained below.

To start, that these brief episodes neither required medical attention nor resulted in permanent injury strongly points towards the conclusion that even in the aggregate they do not constitute more than noncompensable, *de minimis* injury.  *See, e.g., Furman v. Warden*, 827 Fed. App'x 927, 933 (11th Cir. 2020) ("[I]njuries that have been found to exceed the de minimis threshold go beyond "routine discomfort" and often include

injuries requiring medical attention or resulting in permanent injury."); *Jones*, 2010 WL 3239286, at \*2  (holding that a wrist injury was *de minimis* when it was temporary and did not require medical attention).  Courts have routinely held that episodes of pain lasting *significantly* longer than the seconds or few minutes described by Brooks are only *de minimis* injuries.  *See, e.g., Oliver*, 289 F.3d at 629 (holding that leg and back pain lasting for more than fifty hours on multiple occasions was *de minimis*); *Siglar*, 112 F.3d at 193 (finding that prisoner who alleged he had a painful bruised ear for three days did not meet § 1997e(e) standard); *Jarriett*, 162 Fed. App'x at 401 (finding four days of leg swelling and pain to be *de minimis*).  If a days-long episode of physical pain alone is not more than a *de minimis* injury, then a number of brief episodes of a comparable aggregate length spread out over a period of years necessarily must be *de minimis* as well.

Moreover, CDOC is unaware of any authority suggesting that the sort of brief and temporary episodes of pain described by Brooks can – when aggregated with other such episodes – constitute a more-than-*de-minimis* physical injury for the purposes of § 1997e(e).  Indeed, a number of cases suggest the opposite result.  *See, e.g., Quinlan v. Pers. Transp. Servs. Co.*, 329 Fed. App'x 246, 249 (11th Cir. 2009) (holding that "continuous" or ongoing episodes of intermittent back pain occurring over a multi-year period were *de minimis*); *Harold v. Tangipahoa Par. Sheriff Off.*, No. CV 20-2220, 2021 WL 2920513, at \*14 (E.D. La. June 18, 2021), *report and recomm. adopted*, No. CV 20-2220, 2021 WL 2911926 (E.D. La. July 12, 2021) (holding that a year of intermittent episodes of constipation and pain was a de minimis injury); *Rivers v. Donaway*, No. 1:16-CV-40-WTH-GRJ, 2017 WL 3083689, at \*10 (N.D. Fla. May 4, 2017), *report and recomm. adopted*, No. 116CV00040WTHGRJ, 2017 WL 3082668 (N.D. Fla. July 19,

2017) (holding that ongoing back pain unsupported by medical evidence is *de minimis*); *Carrera v. Hunt*, No. 6:08-CV-0032-BI, 2008 WL 5973782, at *6 (N.D. Tex. Oct. 20, 2008), *report and recomm. adopted*, No. 608-CV-032-C, 2009 WL 1066304 (N.D. Tex. Apr. 21, 2009) (finding chronic aches and pains to be *de minimis*).

More fundamentally, concluding that an unspecified number of episodes of self-reported abdominal or rectal pain lasting from 30 seconds up to a few minutes satisfies the PLRA's physical injury requirement would flatly contradict the entire purpose behind that requirement.  When instituting it, Congress was primarily concerned with the prospect that inmates might concoct allegations of impossible-to-verify emotional or mental injury – or, by extension, self-reported physical pain alone – in order to defeat dismissal or summary judgment; § 1997e(e) is intended to "vouch" for those amorphous claimed injuries, showing that the inmate really was injured.  *See Dawes*, 239 F.3d at 496; *see also Carter*, 940 F.3d at 1240.  Whether Brooks testified about one transient and short-lived episode of discomfort or many, the point remains: the only evidence supporting that contention is his own self-serving statements.  That is precisely the sort of self-reported, unverifiable injury that § 1997e(e) was intended to preclude.

Put simply, the only evidence that Brooks suffered repeated episodes of physical discomfort as a result of CDOC's failure to accommodate him is his own say-so. Allowing those self-reports (and *only* those self-reports) to support an award of compensatory damages would directly contradict the fundamental purpose underlying the PLRA's physical injury requirement, and the host of caselaw analyzing and applying it.

**II.** *Judgment as a matter of law is warranted with respect to Brooks's Title II ADA claim in its entirety because the undisputed evidence shows that CDOC or its staff members acted with the requisite intent, including deliberate indifference.*

Additionally, judgment should be entered against Brooks on this entire ADA claim for one simple reason: the undisputed and uncontroverted evidence presented at trial demonstrates that neither CDOC nor any of its employees acted with the requisite intent, including by engaging in deliberate indifference, to constitute intentional discrimination as required for a Title II ADA claim for money damages.  Judgment as a matter of law under Rule 50 is warranted for this reason as well.

To prevail on a claim for money damages under Title II of the ADA, a plaintiff must prove *intentional* discrimination.  *See Hans v. Bd. of Shawnee Cty. Comm'rs*, 775 Fed. App'x 953, 956 (10th Cir. 2019).  While the Tenth Circuit is less clear, Brooks has argued, and CDOC has accepted for the purposes of his claim, that this can be satisfied by a showing of deliberate indifference.  *See Gray v. Cummings*, 917 F.3d 1, 17 (1st Cir. 2019) (noting unsettled nature of the law but applying deliberate indifference standard).

To meet that standard, a plaintiff must show that the defendant (1) had knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood.  *See Freeman v. Colo. Dep't of Corr.*, No. 16-CV-02181-NRN, 2019 WL 1296631 at *5 (D. Colo. Mar. 21, 2019)); *see also, Cropp v. Larimer Cty., Colo.*, 793 Fed. App'x 771, 780 (10th Cir. 2019).  This standard is stringent; a plaintiff must show that the harm was so obvious the defendant *must* have known that his or her rights were substantially likely to be violated, and the failure to act must be more than negligence.  *See Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1264 (10th Cir. 2018).

Here, no evidence establishing deliberate indifference was presented.  Brooks produced evidence that he requested a first pull or medline pass as an ADA

accommodation on at least one occasion, and that he filed at least two grievances complaining about the denial of that request.  Brooks contends that these denials amount to deliberate indifference on CDOC's part.  But more is required to establish deliberate indifference.  The trial evidence showed that CDOC received his requests, forwarded them on to the decision-maker it perceived to be the appropriate one (CDOC's clinical services), actively considered them, and then subsequently denied his requests as a result of an informed and reasoned decision by medical providers that the meal pass was not necessary.  Brooks may not have been aware of that behind-the-scenes process, but it does not change the fact that the evidence is undisputed that the evaluation process was ongoing, and that CDOC ultimately denied his request because CDOC medical experts determined that he did not have a need for the accommodation he sought.  *See, e.g., Vega v. Davis*, 673 Fed. App'x 885, 890-91 (10th Cir. 2016) (holding that a prison official can rely on a medical professional's opinion unless it is contrary to an obvious risk)

While Brooks testified that he believed that his various requests for accommodation were being improperly ignored and/or denied*, his point of view is not the important one.  See Kee v. Ahlm*, 219 Fed. App'x 727, 730 (10th Cir. 2007) (holding that the reasonableness of a search in the Fourth Amendment context must be evaluated from the mindset of the law enforcement defendants, and not the plaintiff).  Deliberate indifference turns on the subjective mindset of the *defendant*; in other words, in this case, the question is whether CDOC personnel actually knew *from their own perspectives* that it was obvious that their decision to deny Brooks's request for accommodation would violate his rights under the ADA, and they disregarded that substantial likelihood.  *Id.*; *George , on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of*

*Comm'rs*, 32 F.4th 1246, 1257 n. 3 (10th Cir. 2022).  And as explained above, the

uncontradicted evidence does *not* show that.  Even if CDOC's decision to deny Brooks's

request for accommodation as not medically necessary or indicated appears incorrect in

retrospect, mere error or negligence does not equal deliberate indifference.  *Havens,* 897

F.3d at 1264. Judgment as a matter of law is warranted as to Brooks's Title II ADA claim

in its entirety for this reason.

## CONCLUSION

WHEREFORE, for the foregoing reasons, CDOC respectfully requests that the

Court grant the instant Renewed Motion and enter judgment as a matter of law.

Respectfully submitted this 13th day of January, 2022.

PHILIP J. WEISER
Attorney General

/s/ *Joshua G. Urquhart*
JOSHUA G. URQUHART*
Senior Assistant Attorney General
KELLEY M. DZIEDZIC*
RACHEL M. LIEB*
Assistant Attorney Generals
*Counsel of Record
Civil Litigation & Employment Law Section
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6000
Facsimile: 720-508-6032
E-mail: joshua.urquhart@coag.gov
kelley.dziedzic@coag.gov
rachel.lieb@coag.gov
*Attorneys for Colorado Department of//*
*Corrections*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 13, 2023, I have served the foregoing **RENEWED RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW** upon all parties by **E-FILING** with the court via CM-ECF, which will send a notification to the following:

Kevin D. Homiak
kevin@homiaklaw.com

Athul K. Acharya
athul@pubaccountability.org

*Attorneys for Plaintiff Jason Brooks*


***Courtesy copy e-mailed to client representatives:***
Adrienne Sanchez, Associate Director of Legal Services, CDOC


*s/ Elle Di Muro*

26