IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02894-SKC

JASON BROOKS,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

_____

**PLAINTIFF JASON BROOKS'S AMENDED
<u>OPPOSED</u> PETITION FOR EX PARTE ORDER TO SHOW CAUSE
PURSUANT TO C.R.S. § 38-35-204**

_____

Plaintiff Jason Brooks submits this Amended Opposed Petition for Ex Parte Order to Show Cause under C.R.S. § 38-35-204 as to why the lien attached hereto as *Exhibit A* should not be invalidated.[1]

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), undersigned counsel conferred with counsel for the CDOC regarding this Amended Petition on April 3, 2024. The CDOC opposes the relief requested herein.

---

[1] Undersigned counsel learned on April 1, 2024, that the 19th Judicial District is the lien claimant and the lienholder for the lien hereto as Exhibit A. As a result, Mr. Brooks files this this Amended Opposed Petition for Ex Parte Order to Show Cause under C.R.S. § 38-35-204 to (i) identify the 19th Judicial District as the entity to which the Order to Show Cause should be issued, and (ii) clarify in the Legal Standard and Argument sections that the Order to Show Cause "may be granted *ex parte*." C.R.S. § 38-35-204(1) (emphasis added).

## STATEMENT OF FACTS

1. On April 27, 2010, a restitution judgment of $5,132,352.46 was entered against Mr. Brooks in Case Number 2009CR000959 in the District Court for Weld County, Colorado. (*Ex. B*, K. Homiak Decl. (Mar. 29, 2024) ¶ 2.)

2. That same day, Mr. Brooks was sentenced to serve a term of 32 years with the Colorado Department of Corrections. (*See id.* ¶ 3.)

3. Mr. Brooks was released from the Colorado Department of Corrections on August 16, 2021, and he completed his parole on December 10, 2023. (*See id.* ¶ 4.)

4. On May 15, 2023, the Clerk of the Court for the District Court of Weld County provided a Transcript of Judgment that lists the "Original Judgment Amount" as $9,169,643.38, and the "Judgment Date" as May 15, 2023. (*See id.* ¶ 5; *Ex. A*, Notice of Lien (May 16, 2023) at 3.)

5. On May 16, 2023, the Colorado Secretary of State issued a Restitution Lien pursuant to C.R.S. § 16-18.5-104(b). (*See id.* ¶ 6; *Ex. A*, Notice of Lien at 1.)

## LEGAL STANDARD

Colorado Revised Statute § 38-35-204 sets forth the procedure for declaring spurious liens invalid. Section 38-35-204(1) provides that:

> Any person whose real or personal property is affected by a recorded or filed lien or document that the person believes is a spurious lien or spurious document may petition . . . ***the federal district court in Colorado*** for an order to show cause why the lien or document should not be declared invalid. The petition shall set forth a concise statement of the facts upon which the petition is based and shall be supported by an affidavit of the petitioner or the petitioner's attorney. ***The order to show cause may be granted ex parte*** . . . .

C.R.S. § 38-35-204(1) (emphasis added).[2]

The statute sets forth a procedure for issuance of an *ex parte* show cause order to:

(a) Direct any lien claimant and any person who recorded or filed the lien or document to appear as respondent before the court at a time and place certain not less than ten days and not more than twenty days after service of the order to show cause why the lien or document should not be declared invalid and why such other relief provided for by this section should not be granted.

(b) State that, if the respondent fails to appear at the time and place specified, the spurious lien or spurious document will be declared invalid and released; *and*

(c) State that the court shall award costs, including reasonable attorney fees, to the prevailing party.

C.R.S. § 38-35-204(1)(a)-(c) (emphasis added).

The statute further provides for the following relief:

If, following the hearing on the order to show cause, the court determines that the lien or document is a spurious lien or spurious document, the court shall make findings of fact and enter an order and decree declaring the spurious lien or spurious documents and any related notice of lis pendens invalid, releasing the recorded or filed spurious lien or spurious document, and entering a monetary judgment in the amount of the petitioner's costs, including reasonable attorney fees, against any respondent and in favor of the petitioner. A certified copy of such order may be recorded or filed in the office of any state or local official or employee, including the clerk and recorder of any county or city and county and the Colorado secretary of state.

C.R.S. § 38-35-204(2).

---

[2] Rule 105.1 of the Colorado Rule of Civil Procedure states: "Any person whose real or personal property is affected by a spurious lien or spurious document, as defined by law, may file a petition in the district court in the county in which the lien or document was recorded or filed, or in the district court for the county in which affected real property is located, for an order to show cause why the lien or document should not be declared invalid." Colo. R. Civ. P. 105.1. Thus, § 38-35-204(1) authorizes the filing of a petition for order to show cause as to why a spurious lien or document should not be declared invalid in "the federal district court in Colorado," but Rule 105.1 does not. C.R.S. § 38-35-204(1). The rule does not preclude Mr. Brooks from filing this petition in federal court, however, because when there is a conflict between a state rule and a statute, the statute prevails. *Cf. Montoya v. People*, 740 P.2d 992, 996 (Colo. 1987) ("We acknowledge that in the event of a conflict between a statute concerning a matter of substantive import and a rule of evidence, the statute will prevail over the rule."); *Town of Red Cliff v. Reider*, 851 P.2d 282, 284 (Colo. App. 1993) ("[T]o the extent that the statutory procedures [in eminent domain proceedings] differ from the procedures under the civil rules, the statute, not the rules, govern.").

This Court has the power under 28 U.S.C. § 2201 (the Declaratory Judgment Act) to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The Federal Rules of Civil Procedure provide procedures for obtaining a declaratory judgment under 28 U.S.C. § 2201. Fed. R. Civ. P. 57. "The court may order a speedy hearing of a declaratory-judgment action." *Id*.

## ARGUMENT

The Court should issue an *ex parte* Order to Show Cause to the 19th Judicial District forthwith, because the lien is invalid for several reasons.

### I. The Lien is Based on a Statute that Does Not Apply to Mr. Brooks.

*First*, the lien is improperly based on a statute that does not apply to Mr. Brooks—*i.e.*, C.R.S. § 16-18.5-104. Colorado law sets forth two procedures for collecting restitution judgments from criminal defendants. The first procedure is found in § 16-18.5-106 and applies "[w]henever a person is sentenced to the department of corrections." C.R.S. § 16-18.5-106(1). And it *still* applies where, as here, "a defendant is released from a correctional facility." C.R.S. § 16-18.5-106(3). The second procedure is found in § 16-18.5-104 and applies "[u]nless the defendant is sentenced to the custody of the executive director of the department of corrections." C.R.S. § 16-18.5-104(1).[3]

Here, there is no dispute that Mr. Brooks was "sentenced to the department of corrections." C.R.S. § 16-18.5-106(1); Statement of Facts ("SoF") ¶¶ 1-2, *supra*. On April 17, 2010, Mr. Brooks was sentenced to serve 32 years in the CDOC. (*See id.* ¶ 2.) He ultimately served about twelve and

---

[3] Even if § 16-18.5-104 applied to Mr. Brooks, however, it appears there is only a twelve-year window during which a lien can remain "in effect" without renewal. C.R.S. § 16-18.5-104(5)(b) ("The lien created by this paragraph (b), shall remain in effect without the necessity of renewal for *twelve years* . . . ."). Although the statute is ambiguous, the State was arguably required to perfect the judicial lien into this statutory restitution lien at any time between April 27, 2010 (the date Mr. Brooks was sentenced) through April 27, 2022—which never occurred.

4

a half years and was released on August 16, 2021. (*See id.* ¶ 3.) Thus, by its own plain language, § 16-18.5-106—*not* § 16-18.5-104—applies. Nor has undersigned counsel found any case applying § 16-18.5-104 to someone who—like Mr. Brooks—was "sentenced to the department of corrections" and "released from a correctional facility." C.R.S. § 16-18.5-106. Because the lien is time barred and relies on a statute that does not apply to Mr. Brooks, it must be invalidated.

II.   **Section 16-18.5-106 Doesn't Give the State Authority to Obtain a Lien on Mr. Brooks's Personal Property Either.**

*Second*, even if the State had relied on the correct statute (*i.e.*, C.R.S. § 16-18.5-106), that statute does not give the State authority to obtain a lien on Mr. Brooks's personal property either. Instead, it allows the Executive Director of the CDOC or his designee to "fix the time and manner of payment of" restitution while Mr. Brooks was incarcerated and "direct that a portion of the deposits into [his inmate] account be applied to any outstanding balance" during that time. *Id.* § 16-18.5-106(2). Once he was released, Mr. Brooks was then "obligated to make payments for restitution as required by" another statute—§ 17-2-201. *Id.* § 16-18.5-106(3). Section 17-2-201, in turn, states that the State Board of Parole "shall order that [an] offender make restitution to the victims or victims of his conduct." *Id.* § 17-2-201(5)(c)(1). But nothing in § 16-18.5-106 or § 17-2-201 authorizes the State to obtain a restitution lien on Mr. Brooks's personal property to collect a restitution judgment. So even if the State had used the correct statute that applied to Mr. Brooks, it would still be invalid.

III.   **The Lien States the Incorrect Original Judgment Amount and the Incorrect Revived Amount.**

*Third*, the lien incorrectly states the "Original Judgment Amount" as being $9,169,634.3, when it is undisputed that the original judgment amount was for $5,132,352.46. (*See* SoF ¶ 1.) In addition, even if the Weld County Clerk had recorded a "Revived Judgment Amount," the revived judgment amount would still be incorrect.

5

Generally, criminal defendants owe simple interest on a restitution judgment from the date of the entry of the order at a rate of right percent per year. *Id.* § 18-1.3-603(4)(b). However, "[i]nterest on an order for restitution does not accrue while . . . [t]he defendant is serving in a correctional facility operated by . . . the department of corrections." *Id.* § 18-1.3-603(b.5)(I). Thus, since the restitution order was for $5,132,352.46, it should only have started accruing interest when he was released on August 16, 2021—approximately 31 months ago. With simple interest of eight percent per year, that would make the total restitution amount with interest about $6.2 million—*not* $9,169,634.38. So, in other words, the revived judgment amount appears to be off by about $3 million. The incorrect "Original Judgment Amount" of the lien that is recorded—on its own—is sufficient to invalidate it.

## IV.  The Lien Relies on the Wrong Judgment Date.

*Fourth*, the lien is based on the wrong judgment date. The Transcript of Judgment states that judgment was entered on May 15, 2023 (*see Ex. A*, Notice of Lien), but Mr. Brooks's restitution judgment was entered more than *thirteen years* earlier on April 27, 2010 (*see* SoF ¶ 1). The effective date of an entry of judgment is "the date set forth in the written judgment"—not the date the lien was filed or the date the transcript of judgment was obtained. *See* C.R.C.P. 58(a). In other words, the filing of a lien does not constitute a "new" judgment. This makes sense, as holding otherwise would allow creditors to wait to file a transcript of judgment for as long as they want, and then have the lien's expiration date run from the date of filing, rather than the date of the judgment. *Cf. Davis Bros. Drug Co. v. Counter*, 225 P. 245, 246 (Colo. 1924) ("If the contention in question were sound, one who had a judgment rendered by a justice of the peace might refrain from filing the transcript for nearly six years, and then have a six-year lien from the time of filing."). Thus, the incorrect judgment date on the lien requires that it be invalidated.

6

V. **Mr. Brooks's Damages are for Personal Injuries and Should Thus Be Exempt from any Judgment Lien.**

*Fifth*, Mr. Brooks's damages in this case are for personal injuries and should thus be exempt from any judgment lien under Colorado law. A restitution judgment is typically considered a judgment lien. *See, e.g.*, *United States v. Holmes*, No. 94-11666, 1998 WL 19489, at *1 (N.D. Cal. Jan. 5, 1998) ("Because the restitution debt, ordered by the discretion of a judicial act, caused the imposition of the lien against appellee's homestead, the lien is a judgment lien, and therefore avoidable in bankruptcy."). "[I]n Colorado, a judgment lien does not attach to the exempt portion of an owner's interest in property." *Matter of Howard*, 169 B.R. 71, 72 (D. Colo. 1994). Section 13-54-102(1)(n) exempts "from levy and sale under writ of attachment or writ of execution . . . [t]he proceeds of any claim for damages for personal injuries suffered by any debtor." C.R.S. § 13-54-102(1)(n). And the Colorado Court of Appeals has explained that, "if property is exempt from execution, it must of necessity be exempt from the lien of the judgment." *City Ctr. Nat. Bank, N.A. v. Barone*, 807 P.2d 1251, 1252 (Colo. App. 1991) (citing *Weare v. Johnson*, 20 Colo. 363, 367, 38 P. 374, 376 (Colo. 1894).)

VI. **Colorado's Restitution Lien Statutes are Preempted by the Americans with Disabilities Act.**

*Sixth*, even if the lien was authorized under Colorado law (and it is not), it would nevertheless be preempted by the Americans with Disabilities Act as applied to this case.

The doctrine of federal preemption provides that "[u]nder the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are without effect." *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010). Conflict preemption or obstacle preemption exists when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). To determine whether the State's actions create a sufficient obstacle to the purposes and

7

objectives of a federal law, the Court must determine what those purposes and objectives are. *See Hillman v. Maretta*, 569 U.S. 483, 491 (2013). With regard to the ADA, those purposes are well established. *See, e.g.*, *Zemedagegehu v. Arthur*, No. 1:15CV57 JCC/MSN, 2015 WL 1930539, at *14 (E.D. Va. Apr. 28, 2015) ("The legislative history of the ADA indicates congressional intent to specifically remedy the disparate treatment of inmates in local jails through enactment of Title II of the ADA.").

Here, allowing the State to enforce its lien on Mr. Brooks's compensatory damages judgment for intentional discrimination would "conflict sharply with [the ADA's] goals." *Williams v. Marinelli*, 987 F.3d 188, 201 (2d Cir. 2021) (holding that § 1983 preempted a state statute under which the defendant's compensatory damages award was required to be used to pay for the cost of his public defender). And it remains unclear whether (and how) the State intends to pay Mr. Brooks's restitution victims, the ADA preempts the state restitution statutes as applied to Mr. Brooks's judgment in this case. *See id.* at 202 ("[E]ven if we agreed with Marinelli that Congress has tacitly approved of the use of cost-of-incarceration statutes in the § 1983 context, this would not disprove that the State's actions here, in the aggregate, sharply conflict with § 1983's goals."). As a result, even if a lien were valid under Colorado law, it would nevertheless be preempted by the ADA.

## CONCLUSION

For the reasons set forth above, Mr. Brooks respectfully requests that the Court issue an *ex parte* order to show cause to the 19th Judicial District as to why the lien attached hereto as *Exhibit A* should not be invalidated. Specifically, the Court should issue an order that does the following:

(a) Direct any lien claimant (i.e., the 19th Judicial District) and any person filed the lien or document (i.e., the 19th Judicial District) to appear as respondent before the Court at a time and place certain not less than ten days and not more than twenty days after service

of the order to show cause why the lien or document should not be declared invalid and why such other relief provided for by this section should not be granted.

(b) State that, if the State of Colorado and the Clerk of the Court for Weld County fail to appear at the time and place specified, the spurious lien or spurious document will be declared invalid and released; *and*

(c) State that the Court shall award costs, including reasonable attorney fees, to Mr. Brooks, in the event that the lien is found to be spurious.

Dated: April 3, 2024

Respectfully submitted,

*s/ Kevin D. Homiak*
Kevin D. Homiak
WHEELER TRIGG O'DONNELL LLP
370 17th Street, Suite 4500
Denver, Colorado 80204

and

Athul K. Acharya
PUBLIC ACCOUNTABILITY
P.O. Box 14672
Portland, Oregon 97293

*Attorneys for Plaintiff Jason Brooks*

9

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on April 3, 2024, I electronically filed the foregoing **PLAINTIFF JASON BROOKS'S OPPOSED PETITION FOR EX PARTE ORDER TO SHOW CAUSE PURSUANT TO C.R.S. § 38-35-204** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record at their respective email addresses.

*s/ Kevin D. Homiak*
Kevin D. Homiak