# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:13-cv-02894-SKC

JASON BROOKS,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

---

## ORDER RE: MOTION FOR WRIT OF EXECUTION (DKT. 491)

---

On December 16, 2022, a jury found Defendant Colorado Department of Corrections ("CDOC") liable for violating Plaintiff Jason Brooks's rights under Title II of the Americans with Disabilities Act (ADA) during the time of his incarceration. Dkt. 434. The jury awarded Mr. Brooks $3.5 million in damages. *Id.* On April 28, 2023, the Court entered an Amended Judgment in favor of Mr. Brooks in the amount of $3,500,000.00 plus post-judgment interest. Dkt. 461.

Now before the Court is Plaintiff's Opposed Motion for Writ of Execution under Fed. R. Civ. P. 69. Dkt. 491. Plaintiff argues that the CDOC has not satisfied the judgment against it because Colorado's 19th Judicial District intercepted the CDOC's

1

payment to Mr. Brooks and applied the funds to Mr. Brooks's sizeable victim-restitution debt.[1] Dkt. 491.

The CDOC filed a Response (Dkt. 492), which was followed by Mr. Brooks's Reply (Dkt. 495). The Court has considered the Motion and related briefing, the entire case file, and the governing law. No hearing is necessary. For the following reasons, the Court denies the Motion as moot.

## ANALYSIS

At the outset, the Court notes the parties spend ample time discussing the 19th Judicial District and whether its actions were authorized by statute or other laws. But the 19th Judicial District is not a party to this case, and therefore, the Court has no jurisdiction over it or its actions. Thus, any discussion or analysis by this Court of the 19th Judicial District's authority or conduct would be little more than an advisory opinion; the Court declines to undertake such an exercise. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (federal courts have no power to render advisory opinions). To the extent Mr. Brooks challenges the 19th Judicial District's conduct, he must do so in a separate matter before the appropriate body.

---

[1] Mr. Brooks was prosecuted and convicted in 2010 in the 19th Judicial District in Weld County, Colorado, for various counts of securities fraud. He owed over $7 million in restitution of which approximately $5 million is the original restitution and the remainder is interest. *See generally* state case number 2009CR959; *see also* Dkt. 384, p.3 n.1.

Turning to the writ of execution, the CDOC's primary argument is that it has satisfied the judgment, and therefore, Mr. Brooks's request for an order enforcing the judgment should be denied. The Court agrees.

The CDOC is an arm of the state. *Dodge v. Shoemaker*, 695 F. Supp. 2d 1127, 1135 (D. Colo. 2010). Under Colorado law, payment of judgments against the state can only be made as contemplated in its statutes governing Risk Management. *See* Colo. Rev. Stat. § 24-30-1520 ("No moneys in the state treasury shall be disbursed therefrom . . . for the payment of judgments against the state, its officials, or its employees except as provided in this part 15."). When, as here, a final money judgment has been entered against the state, payment is issued from the risk management fund. Colo. Rev. Stat. § 24-30-1510(3)(a).

Here, the CDOC states, and Mr. Brooks does not dispute, that following the issuance of the Amended Judgment, the CDOC made a payment request (or warrant) for the full judgment and interest amounts payable to Mr. Brooks. Dkt. 487, p.2. The CDOC also requested separate payments (warrants) for the costs and attorney fees awarded.[2] *Id.* at pp.2-3. The office of risk management processed the CDOC's requests through Colorado's office of the state controller, and it issued a payment made out to Mr. Brooks in the amount of $3,661,554.77. *Id.* at p.3. Mr. Brooks never directly received the payment, however, because the 19th Judicial District intercepted

---

[2] The payment of costs and fees is not at issue in this matter.

3

it pursuant to Colo. Rev. Stat. § 24-30-202.4—which permits state agencies to direct the controller to withhold debts owed from any disbursement—and applied it to Mr. Brooks' pending restitution order from his previous criminal convictions.[3] *See* Dkt. 483-2, p.2; Dkt. 492-2.

Mr. Brooks now contends the CDOC has not satisfied the judgment because he never personally received or accepted the payment. He likens the 19th Judicial District's interception of the payment to a thief intercepting a check before it could be cashed by the payee. Dkt. 491, pp.5-6. But the analogy is not well taken. Where an unrelated third party steals a check, forges the payee's signature, and cashes the check, the payee realizes no financial benefit from the payment. Here however, despite not receiving the payment in the form he preferred, it is undisputed that Mr. Brooks received the benefit of the CDOC's payment because the funds were applied to his restitution account from his prior criminal convictions.

To be sure, Mr. Brooks has acknowledged his receipt of the financial benefit of the CDOC's payment. The Court takes judicial notice of filings Mr. Brooks has made in the Weld County District Court. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (proper for district court to take judicial notice of state court's file); *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (court may take judicial notice of facts which are a matter of public record), *abrogated on other*

---

[3] The Court notes that while § 24-30-202.4 does not specifically define state agency, § 24-30-1502 defines "State agency" to include "the judicial departments of the state."

4

*grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001). In one of those filings, Mr. Brooks admitted that the CDOC's $3,661,554.77 payment to him, which the 19th Judicial District intercepted, was not only applied to his criminal debt, but it resulted in "now paying off almost 70% of his original restitution[.]" Dkt. 492-3, p.1. In that same court filing he also referred to himself as having "pa[id] off over $3.6 million dollars (~70%) of the original restitution ordered against him[.]" *Id.* at p.5.

These judicial admissions—that the CDOC's payment to Mr. Brooks was in fact received by him based on his receipt of the financial benefit of the payment—are dispositive of the issue before the Court. *See Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th 1300, 1313 (10th Cir. 2022) (judicial admissions include formal concessions in the pleadings and are not evidence but rather have the effect of withdrawing a fact from contention; they are not limited to affirmative statements that a fact exists; they include intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law).

For similar reasons, the Court is not persuaded by Mr. Brooks's reliance on the Second Circuit's opinion in *Williams v. Marinelli*, 987 F.3d 188 (2d. Cir. 2021). There, a jury awarded the plaintiff, an incarcerated person, compensatory and punitive damages against the individual defendant, a former corrections officer, for his violation of the plaintiff's Eighth Amendment rights. *Id.* at 191-92. After the judgment was final, the State of Connecticut voluntarily paid the judgment on the

defendant's behalf (despite having no legal obligation to do so) but also diverted nearly half of the $300,000 judgment to its own Department of Administrative Services as payment for the costs of the plaintiff's incarceration. *Id*. at 192. The state also paid $15,140 to the mother of the plaintiff's child for back child support. *Id*. Connecticut then deposited the balance into the plaintiff's inmate trust account but then sued the plaintiff for reimbursement of his public defender costs. *Id*. After the plaintiff moved for aid of judgment in the U.S. District Court for the District of Connecticut, the federal court concluded that the defendant had not satisfied the judgment because the state's actions nullified the jury award and undermined Congress's purposes in enacting 42 U.S.C. § 1983. *Id*. at 195. In affirming, the Second Circuit noted that the "chief goals of § 1983 are to provide compensation for violations of federal rights, and to deter such violations." *Id*. at 199. The circuit then concluded that these goals would be "eviscerated if both the constitutional tortfeasor and his employer, the State, are relieved of the bulk of the financial consequences of the violation." *Id* at 201. The circuit further observed that Connecticut's actions sent the message that individual defendants would not suffer financial consequences for their violations of constitutional rights. *Id*. at 203.

The posture of Mr. Brooks' case is readily distinguishable from *Williams*.[4] In this matter, the State of Colorado has not engaged in bookkeeping maneuvers to

---

[4] Moreover, both the Connecticut District Court and the Second Circuit made abundantly clear that the outcome in *Williams* was highly dependent on the specific facts of that case.

6

relieve itself of the financial burdens in this case. Rather, the CDOC made a payment request for the judgment against it, the state controller issued that payment made payable to Mr. Brooks, and the State of Colorado intercepted the payment and applied the funds to Mr. Brooks's victim-restitution debt thereby satisfying roughly 70% of *his* original restitution debt. Thus, accepting *arguendo* that a goal of the ADA is deterrence via financial penalties, the goal is satisfied here because the Defendant CDOC suffered the penalty and actually paid the sizeable monetary judgment against it to Mr. Brooks; and Mr. Brooks and his victims, rather than the State of Colorado, benefited from the state's interception of the payment because the state applied those funds to Mr. Brooks restitution.[5]

\*   \*   \*

For the reasons shared above, the Court finds the CDOC acted in accordance with Colorado state laws regarding the payment of judgments against it, and Mr. Brooks received the full financial benefit of the judgment awarded in his favor. The

---

[5] In fact, *Williams* supports the Court's conclusions in this regard because there, the Connecticut District Court recognized that the State of Connecticut's payment of child support arrears on the plaintiff's behalf counted toward payment of the judgment against the individual defendant. And in affirming, the Second Circuit discussed several cases in support of its conclusion that directly support the Court's holding here. *See Marinelli*, 987 F.3d at 204-205 (citing *Beeks v. Hundley*, 34 F.3d 658 (8th Cir. 1994) (state's seizure of inmate's recovery to pay victim restitution was not preempted by § 1983 because money was applied to inmate's pre-existing financial obligations and did not reduce the deterrent effect of judgment) and *Vincent v. Sitnewski*, No. 10 Civ. 3340 (TPG), 2011 WL 4552386 (S.D.N.Y. Sept. 30, 2011) (no conflict with § 1983 where state did not recoup its own costs but rather, did so on behalf of individual crime victims)).

7

Court further concludes that this result does not conflict with any purported statutory goals regarding compensation or deterrence via financial penalties. Because the CDOC has satisfied the judgment against it, Mr. Brooks's request for a writ of execution to enforce the judgment is DENIED AS MOOT.

DATED: April 25, 2025

BY THE COURT:

_____

S. Kato Crews
United States District Judge